United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**JUL 2 3** 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CLINTON REGINALD BROWN, | § | |
| Plaintiff | § | Civil Action No. **B-02.142**. |
| vs. | § | JURY DEMAND |
| | § | |
| | § | |
| THE CITY OF HARLINGEN, VALLEY | § | |
| INTERNATIONAL AIRPORT, | § | |
| CAMERON COUNTY, TEXAS, | § | |
| LEONEL SILVA AND | § | |
| RAMIRO MARTINEZ | § | |
| Defendants | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff Clinton Reginald Brown and files this Original Complaint. In support thereof, Plaintiff respectfully offers the following:

### I.

### PARTIES

**1.01** The Plaintiff, Clinton Reginald Brown, is a citizen of the United States of America and a resident of the City of McAllen, County of Hidalgo, and State of Texas.

**1.02** Defendant City of Harlingen is a municipal corporation and governmental subdivision of the State of Texas and may be served with process by serving its Chief Executive Officer, who is its City Manager, Roy Rodriguez, at the following address: 118 E. Tyler, Harlingen, TX 78550. Service by personal service is hereby requested.

**1.03** Defendant Valley International Airport is believed to be a governmental subdivision of the State of Texas, located in the City of Harlingen, State of Texas and may be served by serving its Chief Executive Officer, who is its Director, Michael Browning, at the following address: Valley

International Airport, Airport Terminal A, Harlingen, TX 78550. Service by personal service is hereby requested.

**1.04** Defendant Cameron County is a governmental subdivision of the State of Texas and may be served by serving its Chief Executive Officer, Cameron County Judge Hon. Gilberto Hinojosa, at the following address: 974 E. Harrison, Brownsville, TX 78520. Service by personal service is hereby requested.

**1.05** Defendants Leonel Silva and Ramiro Martinez, who are both sued in their individual capacities, are now, and at all times material to this action, were duly appointed, employed, and acting policemen of the City of Harlingen and/or Valley International Airport. Defendants are also residents of said city and county and may each be served with process at their business residence as follows: 1102 South Commerce Street, Harlingen, TX 78550. Service by personal service is hereby requested.

## II.

## JURISDICTION

**2.01** The jurisdiction of this Court is invoked under the provisions of Title 28, U.S.C. §§ 1331 and 1343. This action arises under the United States and Texas Constitutions, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the United States and Texas Constitutions, and under federal law, particularly 42 U.S.C. §1983, 42 U.S.C. §1985(3), 42 U.S.C. §1981, and 42 U.S.C. §1988.

## III.

## FACTS

**3.01** On July 27, 2000, Plaintiff, Clinton Reginald Brown, traveled by plane to return to his home in McAllen, Texas. He flew into Valley International Airport located in the City of Harlingen,

Cameron County, Texas. Mr. Brown's race is commonly referred to as "African American".

**3.02** He had just relocated his wife to Florida, where they resided prior to taking up residence in McAllen, Texas. Mr. Brown was returning to McAllen where he was to continue working in the capacity of a power operator for C.S.W. Energy, Inc., an electrical power company operating in Hidalgo County, Texas.

**3.03** After arriving at Valley International Airport, Mr. Brown exited the interior portion of the airport, carrying his personal garment bag, which contained personal belongings and cash.

**3.04** While Mr. Brown approached a taxicab outside of the airport, Harlingen Police Officer Leonel Silva, acting under color of state law, approached Mr. Brown and began interrogating him concerning the contents of his luggage.

**3.05** When Officer Silva initially approached Mr. Brown, Officer Silva had no reasonable basis to suspect Mr. Brown had been engaged in any crime.

**3.06** Later that afternoon, when Officer Martinez first approached Mr. Brown, Officer Martinez had no reasonable basis to suspect Mr. Brown had been engaged in any crime.

**3.07** When Officer Silva first began to interrogate Mr. Brown regarding the contents of his luggage, Officer Silva had not formed a reasonable suspicion that Mr. Brown had been engaged in or was about to engage in the commission of a crime.

**3.08** The officer's had no reason to stop and interrogate Mr. Brown other than the fact that Mr. Brown is African American.

**3.09** Without Mr. Brown's consent and without probable cause, Officer Silva detained Mr. Brown and brought him back inside the interior of the airport in full view of the public, and continued to question Mr. Brown regarding the contents of his bag.

**3.10** While inside the airport, Officer Silva was attempting to pressure Mr. Brown to consent to a

search of his bag, which Mr. Brown refused.

**3.11** Mr. Brown was unlawfully detained inside the airport, and interrogated in full view of the public by Officers Silva and Martinez, who had arrived to support Officer Silva's detention.

**3.12** During the detention inside the airport, Martinez utilized a police narcotics dog.

**3.13** The dog did not "alert" or otherwise make any unusual signals concerning the bag.

**3.14** Nevertheless, later that day, officer Silva signed an affidavit in support his application for a search warrant that contained false information.

**3.15** Specifically, the officer claimed that the dog "alerted" to narcotics in the bag. Officer Silva provided his affidavit of the events leading to the confiscation of Mr. Brown's luggage to a magistrate on or about August 1, 2002, in order to secure a search warrant of Mr. Brown's property, which had already been confiscated by the police department at the time application for a search warrant was made.

**3.16** Officer Silva's affidavit did not disclose that Mr. Brown voluntarily provided financial information to Officer Silva in an effort to have his money returned, nor did his affidavit disclose the contents of the financial information which Mr. Brown provided. Officer Silva's affidavit did not disclose any acts committed by Mr. Brown at the airport, which constituted criminal conduct on the part of Mr. Brown.

**3.17** The magistrate signed a search warrant on August 1, 2000. Based on the invalid search warrant, officers Silva and/or Martinez then proceeded to search Mr. Brown's personal garment bag.

**3.18** The officers did not have probable cause for their actions in confiscating Mr. Brown's luggage at the Valley International Airport.

**3.19** During the illegal search of the Plaintiff's garment bag, the officers found the Plaintiff's personal items and money.

**3.20** Within several days after the bag was confiscated, Mr. Brown voluntarily presented himself at the Harlingen Police Department and provided receipts and bank statements demonstrating his earnings and deposits which reflected that he had earned and obtained the confiscated money legally.

**3.21** Officer Silva chose to ignore this evidence and, as the supervisor of the Police Drug Interdiction Unit of the City of Harlingen, he made the decision to continue the illegal confiscation and forfeiture of the money found in Mr. Brown's bag.

**3.22** These officers Silva and Martinez, acting under color of state law, singled out Mr. Brown simply because of his race and lacked probable cause for the initial detention, interrogation, and confiscation of his property.

**3.23** No reasonable police officer could have believed that probable cause existed for the law enforcement actions of either Silva or Martinez.

**3.24** Shortly thereafter, the City of Harlingen, through its agents, namely Officer Silva, referred this matter to the Cameron County District Attorneys office.

**3.25** Within one day after the City of Harlingen illegally searched Mr. Brown's personal garment bag, the Cameron County District Attorney initiated its forfeiture proceedings against Mr. Brown in an effort to deprive Mr. Brown of his right to retain his money.

**3.26** The District Attorneys' office had the opportunity to end the deprivation of Mr. Brown's civil liberties by making an adequate independent investigation of its own.

**3.27** Rather, the District Attorneys' office chose to accept at face value the representations of Officer Silva, and the City of Harlingen in order to deprive the Plaintiff of his money.

**3.28** The District Attorney of Cameron County's Original Petition and Notice of Seizure and Intended Forfeiture was filed pursuant to Article 59, Texas Code of Criminal Procedure.

**3.29** The District Attorney filed its forfeiture proceeding on or about August 2, 2000 in the case styled *State of Texas vs. Clinton Reginald Brown*; Cause No. 2000-08-3136-A; 107th Judicial District Court, Cameron County, Texas.

**3.30** The forfeiture petition and notice of the petition were mailed to Mr. Brown's residence in McAllen, Texas, where he received said notice.

**3.31** At the time the District Attorneys office of Cameron County filed its forfeiture proceeding against Mr. Brown, the District Attorney's office was aware of its right to collect part or all of any proceeds if successfully forfeited under Article 59.01, et seq.

**3.32** At the time the District Attorneys office of Cameron County filed its forfeiture proceeding against Mr. Brown, it anticipated that it would receive part or all of the proceeds should its suit be successful.

**3.33** At the time the District Attorneys office of Cameron County filed its forfeiture proceeding against Mr. Brown, its assistant District Attorney had been provided with financial documents which Mr. Brown voluntarily submitted to Harlingen Police Department to demonstrate the legitimacy of the confiscated money.

**3.34** Article 59 of the Texas Code of Criminal Procedure requires the entity seeking forfeiture of property to plead and prove that the property subject to forfeiture was used or intended to be used or derived from the commission of a felony identified in Art. 59.01(2)(A) or Art. 59.01(2)(B).

**3.35** The District Attorney of Cameron County's Original Petition and Notice of Seizure and Intended Forfeiture, filed on August 2, 2002, failed to identify which of the criminal prohibitions applied to its forfeiture case against Mr. Brown.

**3.36** Mr. Brown specially excepted to this pleading defect and the judge presiding over the forfeiture case ordered the District Attorney of Cameron County, Texas to amend its pleading to

identify the Article 59.01 criminal prohibition upon which it relied in seeking forfeiture of Mr. Brown's money.

**3.37** Subsequently, The District Attorney of Cameron County filed its First Amended Petition and Notice of Seizure and Intended Forfeiture.

**3.38** The District Attorney of Cameron County's First Amended Petition and Notice of Seizure and Intended Forfeiture admitted that the precise felony or felonies were unknown to it at the time it filed its First Amended Petition and Notice of Seizure and Intended Forfeiture. In fact, "the alleged" precise felony or felonies were never known to any of the Defendants before or after they confiscated Mr. Brown's money.

**3.39** Mr. Brown requested summary judgment on the basis that there was no evidence to support the District Attorney of Cameron County's allegation that Mr. Brown had engaged in criminal activity connecting the confiscated proceeds to the Article 59.01 prohibitions.

**3.40** Mr. Brown also requested summary judgment on the basis that no genuine issues of fact existed as to the District Attorney of Cameron County's allegation that Mr. Brown had engaged in criminal activity connecting the confiscated proceeds to the Article 59.01 prohibitions.

**3.41** Prior to filing a response to Mr. Brown's Motion to Dismiss and Motion for Summary Judgment, the Cameron County District Attorneys' office dismissed its case against Mr. Brown by filing a Motion for Non-Suit.

**3.42** The presiding judge of the 107th District Court signed the order granting non-suit on October 8, 2001 thereby dismissing the forfeiture case.

**3.43** Shortly thereafter, Cameron County returned the entire amount of confiscated proceeds to Mr. Brown.

**3.44** Mr. Brown had to employ the services of an attorney to represent him in the forfeiture matter.

**3.45** Mr. Brown paid additional expenses and costs in connection with the defense of the forfeiture case.

**3.46** The confiscation and forfeiture of the Plaintiff's money was brought maliciously, without probable cause, without any reasonable basis to believe Mr. Brown had been involved in any criminal activity at the time, and the forfeiture proceeding was instituted by the Defendants to attempt to cover up and justify each of the Defendant's illegal, offensive and malicious acts and conduct.

**3.47** As a result of the wrongful and illegal acts of each of the Defendants, including but not limited to the racially motivated detention, interrogation, and confiscation of the Plaintiff's property without probable cause and based on an invalid search warrant, the conspiracy to deprive the Plaintiff of his property, the malicious and wrongful enforcement of forfeiture proceedings, the Plaintiff was without his property for over a year and incurred reasonable attorney's fees and expenses in connection with the forfeiture proceedings.

**3.48** Neither the Harlingen Police Department, nor the Cameron County District Attorneys Office, have ever charged Mr. Brown with any criminal violations.

**3.49** The conduct of the Defendants Silva, Martinez, the City of Harlingen, Valley International Airport and Cameron County was taken under color of state law and with deliberate indifference to the Plaintiff's constitutional rights.

**3.50** Further, the conduct of the Defendants, and each of them, individually and in combination, deprived the Plaintiff of the following rights, privileges, and immunities secured to him by the United States and Texas Constitutions:

    a. The right of Plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments;

b. The right to be informed of the nature and cause of the accusation against him, secured under the Sixth and Fourteenth Amendments;

c. The right not to be deprived of life, liberty, or property without due process of law, secured by the Fourteenth Amendment; and

d. The right to equal protection of the laws, secured by the Fourteenth Amendment.

**3.51**  The conduct of the Defendants, and each of them, individually and in combination, deprived the Plaintiff of his rights under 42 U.S.C. § 1985(3), in that officers Silva and Martinez, the City of Harlingen, Valley International Airport and the Cameron County District Attorney's Office all conspired to deprive the Plaintiff of the aforementioned constitutional rights as set forth in paragraphs 3.01 through 3.50.

**3.52**  The conduct of the Defendants, and each of them, individually and in combination, deprived the Plaintiff of his rights under 42 U.S.C. § 1981, in that the illegal conduct of officers Silva and Martinez, the City of Harlingen, Valley International Airport, and the Cameron County District Attorney's Office as set forth in paragraphs 3.01 through 3.50 was racially motivated and amounted to race discrimination.

**3.53**  The conduct of each of the Defendants as set forth in paragraphs 3.01 through 3.50 amounted to denial of due process, unreasonable search and seizure, racial discrimination and racial profiling, conspiracy, malicious prosecution, abuse of process, and false imprisonment.

**3.54**  Each of the Defendants, individually and in concert with others, acted under the pretense and color of law and in their official capacity, but without the authorization of law.  Each defendant acted willfully, knowingly, and with specific intent to deprive the Plaintiff of his rights under the United States, and Texas Constitutions, and statutory law.

**IV.**

## CAUSES OF ACTION AGAINST THE CITY OF HARLINGEN AND

## THE VALLEY INTERNATIONAL AIRPORT

**4.01** Paragraphs 3.01 through 3.54 are incorporated herein by reference.

**4.02** The Defendant City of Harlingen, acting in concert with, or by and through, the Valley International Airport, violated the Plaintiff's constitutional rights and statutory rights as a result of the following:

a. The City's inadequate training and failure to train police officers in the proper methods of stops, interrogation, detention, obtaining search warrants, as well as the search and seizure of individuals and property. The training was so inadequate as to amount to deliberate indifference to the Plaintiff's constitutional rights and directly caused the Plaintiff's constitutional injuries.

b. The City's failure to provide adequate supervision of its officers who engage in stops, interrogation, detention, obtaining search warrants, as well as the search and seizure of individuals and property. The City's supervision of its officers was so inadequate as to amount to deliberate indifference to the Plaintiff's constitutional rights and directly caused the Plaintiff's injuries.

c. The persistent, widespread practice among the City's police officers to engage in racial profiling and singling out of African Americans for racially harassing and unlawful searches and seizures.

d. The failure of the City to implement policies that prohibit racial profiling and singling out of African Americans for harassing and unlawful searches and seizures.

e. The failure to adopt adequate stop, interrogation, detention, confiscation, search and seizure procedures.

**4.03** The City of Harlingen, acting in concert with, and/or by and through Valley International Airport, also initiated, participated in, and/or ratified the baseless forfeiture proceedings against the

-10-

Plaintiff in an effort to secure the money that lawfully belonged to Mr. Brown and cover up each of the Defendant's illegal, offensive and malicious acts and conduct. Such acts amounted to malicious prosecution in violation of 42 U.S.C. § 1983, the United States and Texas Constitutions.

**4.04** The City of Harlingen, acting in concert with, and/or by and through Valley International Airport, also conspired with Cameron County to unlawfully deprive the Plaintiff of his property by initiating, participating in, and/or ratifying the baseless forfeiture proceedings against the Plaintiff in violation of 42 U.S.C. §1985(3).

**4.05** The conduct of the City of Harlingen, acting in concert with, and/or by and through Valley International Airport, as described in each of the preceding paragraphs, also violated 42 U.S.C. §1981, in that the such conduct as described above was motivated purely by the Plaintiff's race.

**4.06** The City's customs, practices and policies described above served as the moving force behind the constitutional and statutory violations and amounted to deliberate indifference to the Plaintiff's aforementioned constitutional and federal statutory rights.

**4.07** The acts alleged above were committed either on the instruction of the Defendants and the City's final decision-makers/policymakers, or with the knowledge and consent of those individuals, and were thereafter approved and ratified by those individuals.

## V.

## CAUSES OF ACTION AGAINST CAMERON COUNTY

**5.01** Paragraphs 3.01 through 3.54 are incorporated herein by reference.

**5.02** The Defendant Cameron County, by and through the Cameron County District Attorneys Office, violated the Plaintiff's constitutional rights and statutory rights as a result of the following:

    a. The County inadequately trained and/or wholly failed to train its district attorneys in the evaluation and prosecution of forfeiture cases that lack any legal merit and that are based on invalid

search warrants and illegal searches and seizures. The training in this instance was so inadequate as to amount to deliberate indifference to the Plaintiff's constitutional rights and directly caused the Plaintiff's constitutional injuries.

b. The County failed to provide adequate supervision of its district attorneys who evaluate and decide to prosecute forfeiture cases that lack legal merit and that are based on invalid search warrants and illegal searches and seizures. The County's supervision of its attorneys was so inadequate as to amount to deliberate indifference to the Plaintiff's constitutional rights and directly caused the Plaintiff's injuries.

c. The persistent, widespread practice among the County's district attorneys to prosecute forfeiture cases that lack any legal merit.

d. The failure of the County to implement policies that prevent the malicious prosecution of totally baseless forfeiture proceedings.

5.03   Cameron County, by and through its District Attorneys office and their agents and representatives, also initiated, participated in, and/or ratified the baseless forfeiture proceedings against the Plaintiff in an effort to secure the money that lawfully belonged to Mr. Brown and cover up each of the Defendants' illegal, offensive and malicious acts and conduct. Such acts amounted to malicious prosecution in violation of 42 U.S.C. § 1983, the United States and Texas Constitutions.

5.04   Cameron County, through its district attorney's office, its agents and representatives, also conspired with the City of Harlingen to unlawfully deprive the Plaintiff of his property by initiating, participating in, and/or ratifying the baseless forfeiture proceedings against the Plaintiff in violation of 42 U.S.C. §1985(3).

5.05   Cameron County's conduct as described in paragraphs 3.01 through 3.54 also violated 42 U.S.C. §1981, in that the County ratified, participated in and/or initiated the wrongful conduct of

-12-

the City of Harlingen which was motivated purely by the Plaintiff's race.

**5.06** The County's customs, practices and policies described above served as the moving force behind the constitutional and statutory violations and amounted to deliberate indifference to the Plaintiff's aforementioned constitutional and federal statutory rights.

**5.07** The acts alleged above were committed either on the instruction of the Defendants and the County's final decision-makers/policymakers, or with the knowledge and consent of those individuals, and were thereafter approved and ratified by those individuals.

**VI.**

**CAUSES OF ACTION AGAINST LEONEL SILVA**

**6.01** Paragraphs 3.01 through 3.54 are incorporated herein by reference.

**6.02** The conduct of Defendant Silva amounted to denial of due process, unreasonable search and seizure, race discrimination and racial profiling, conspiracy, malicious prosecution, abuse of process, false imprisonment in violation of 42 U.S.C. §§ 1983, 1985(3), and 1981.

**6.03** Defendant Silva, individually and in concert with others, acted under the pretense and color of law and his official capacity, but without the authorization of law.  Defendant Silva acted willfully, knowingly, and with deliberate indifference to the Plaintiff's rights under the United States and Texas Constitutions, and statutory law.

**VII.**

**CAUSES OF ACTION AGAINST RAMIRO MARTINEZ**

**7.01**    Paragraphs 3.01 through 3.54 are incorporated herein by reference.

**7.02** The conduct of Defendant Martinez amounted to denial of due process, unreasonable search and seizure, race discrimination and racial profiling, conspiracy, malicious prosecution, abuse of process, false imprisonment in violation of 42 U.S.C. §§ 1983, 1985(3), and 1981.

-13-

**7.03** Defendant Martinez, individually and in concert with others, acted under the pretense and color of law and his official capacity, but without the authorization of law. Defendant Martinez acted willfully, knowingly, and with deliberate indifference to the Plaintiff's rights under the United States and Texas Constitutions, and statutory law.

**VIII.**

**DAMAGES**

**8.01**     Paragraphs 3.01 through 3.54 are incorporated herein by reference.

**8.02**     <u>Damages</u>: As a direct and proximate result of the Defendants' acts and omissions, Plaintiff has suffered

> a. compensatory damages, past and future, including past legal expenses, costs of court and other expenses reasonably incurred in defending the aforementioned forfeiture proceedings;
>
> b. pain and suffering, in the past and future;
>
> c. emotional distress in the past and future
>
> d. lost earnings;
>
> e. damage to reputation in the past and future;
>
> f. mental anguish in the past and future;

**8.03** <u>Punitive Damages</u>: The acts, conduct, and behavior of Defendants, and each of them, were performed knowingly, intentionally, maliciously, and with deliberate indifference, by reason of which the Plaintiff is entitled to an award of punitive damages.

**8.04** <u>Attorney's Fees, Costs of Court, & Pre- and Post-Judgment Interest:</u> Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to a reasonable allowance for attorney's fees as part of his costs, and to the extent allowed by law, all costs of court, and pre-and post-judgment interest, accrued at the

highest rate allowed under the law.

**8.05**  Injunctive and declaratory relief: The Plaintiff also demands declaratory judgment and injunctive relief.  Specifically, the Plaintiff requests a declaration that the Defendants violated his constitutional and statutory rights, as well as an injunction prohibiting the Defendants from similar violations in the future.

## IX.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff urges this Court to grant Plaintiff any and all relief demanded in his Original Complaint.  Further, Plaintiff requests the Court grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF DANIEL G. RIOS, P.C.
323 Nolana Loop
McAllen, Texas 78504
Telephone:  (956) 631-1615
Facsimile:  (956) 682-0566

By: _____
    DANIEL G. RIOS
    State Bar No. 00784844

ATTORNEY-IN-CHARGE FOR PLAINTIFF