United States District Court
Southern District of Texas
FILED

DEC 3 0 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CLINTON R. BROWN | § | |
| Plaintiff | § | |
| VS | § | |
| | § | CIVIL ACTION NO. B-02-142 |
| CITY OF HARLINGEN, TEXAS | § | |
| VALLEY INT'L AIRPORT | § | |
| LEONEL SILVA & | § | |
| RAMIRO MARTINEZ, ET. AL. | § | |
| Defendants | § | |

CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
ASSERTION OF QUALIFIED IMMUNITY DEFENSE
ON BEHALF OF INDIVIDUAL DEFENDANTS

_____

May it Please the Court:

COME NOW DEFENDANTS, the CITY OF HARLINGEN, TEXAS (including VALLEY INTERNATIONAL AIRPORT)[1], LEONEL SILVA and RAMIRO MARTINEZ, Individually and Officially, (hereafter "CITY DEFENDANTS") and file this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**STATEMENT OF THE NATURE & STAGE OF THE PROCEEDING**

This is a civil rights complaint brought under 42 U.S.C. §1983, §1981, and §1985 and the pertinent constitutional provisions prohibiting abuses of police power. Plaintiff Brown has sued a municipality, the CITY OF HARLINGEN, which is organized under the laws of the State of Texas as a local

_____

[1] Valley International Airport (hereafter "VIA") is a department of the CITY OF HARLINGEN and is not a separate juridical entity. Consequently, any and all references to the CITY OF HARLINGEN necessarily include VIA as an agency of the CITY. More importantly, however, is the juridical fact that agencies and departments of a legal entity can not, nor need not, be separately named as parties. *See II, infra.*

government body, as well as two law enforcement officers who were at the time of the alleged incident employees of the CITY OF HARLINGEN.

Plaintiff filed suit on July 23, 2002. The CITY DEFENDANTS filed their Original Answer on August 12, 2002 and a First Amended Answer on September 10, 2002.

In response to the raising of the affirmative defenses of qualified and official immunity in the Answers, the Court has set a hearing on these issues for January 8, 2003. This motion is filed in further support of the assertions of qualified and official immunity, as well as in support of the general denial of the claims.

## EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In support of this dispositive motion, CITY DEFENDANTS submit the following testimonial and documentary exhibits, all of which are duly authenticated and in admissible form for purposes of this dispositive motion:

A.    Custodial Affidavit of the Harlingen Police Department, duly authenticating:

1.    Search warrants for Plaintiff's baggage, with attached affidavits in support of warrants;

2.    Harlingen Special Investigations Police Report;

3.    Photos of contents of Plaintiff's baggage.

## DEFENSES AND AFFIRMATIVE DEFENSES

The INDIVIDUAL DEFENDANTS LEONEL SILVA and RAMIRO MARTINEZ assert the defense of Qualified immunity to all federal claims.

DEFENDANT, CITY OF HARLINGEN, TEXAS, asserts the defense that Plaintiff cannot show a violation of a constitutional or

other federally protected right caused by a custom, policy or practice of the CITY OF HARLINGEN.

## STATEMENT OF THE ISSUES FOR COURT

CITY DEFENDANTS present the following issues for review:

1. Whether Police Officers LEONEL SILVA and RAMIRO MARTINEZ are entitled to the affirmative defense of qualified immunity on Plaintiff's Constitutional and 42 U.S.C. §§1983, 1981, and 1985 claims;

2. Whether DEFENDANT VIA should be named as a party given that it is a department of the CITY OF HARLINGEN; and,

3. Whether Plaintiff can show a violation of a Constitutional or other federally protected right caused by a custom, policy or practice of the CITY OF HARLINGEN.

## SUMMARY OF THE MOTION

Plaintiff's Original Petition asserts claims against the Individual CITY DEFENDANTS as follows: 1) denial of due process, unreasonable search and seizure, race discrimination and racial profiling, conspiracy, malicious prosecution, abuse of process, and false imprisonment causes of action under 42 U.S.C. §§ 1983, 1985(3) and 1981. and 2) under the pretense and color of law, acted willfully, knowingly and with deliberate indifference to the Plaintiff's rights under the United States and Texas Constitutions. Plaintiff's Original Petition asserts claims against the DEFENDANT CITY OF HARLINGEN for inadequate training and supervision regarding stops, detentions and seizure of property, failure to adopt policies prohibiting racial profiling, the failure to adopt adequate stop, detention and confiscation procedures, and participation and conspiracy with Cameron County in forfeiture proceedings in violation of 42

U.S.C. §§ 1983, 1981 and 1985, as well as the United States and Texas Constitutions.

Individual DEFENDANTS SILVA and MARTINEZ, move for summary judgment against Plaintiff on his alleged federal claims on the basis that, because probable cause existed for Plaintiff's stop, detention, and seizure of property, substantive constitutional and statutory violations cannot be proved and thus Individual DEFENDANTS are entitled to qualified immunity.

DEFENDANT CITY OF HARLINGEN moves for summary judgment against Plaintiff on his claim for constitutional and statutory violations on the basis that there is no evidence that Plaintiff was deprived of any constitutional or other federally protected right as a result of an official policy, practice or custom of the CITY OF HARLINGEN.

## SUMMARY OF THE ARGUMENT

Each of the Individual DEFENDANTS SILVA and MARTINEZ are entitled to qualified immunity as to all Plaintiff's federal claims because none of the conduct of the Individual DEFENDANTS was in violation of a clearly established constitutional right under the current state of the law, nor was their conduct objectively unreasonable in light of "clearly established" law at the time of the alleged violation.  Therefore, the Individual DEFENDANTS are entitled to dismissal or summary judgment on Plaintiff's claims.

DEFENDANT VALLEY INT'L AIRPORT is not a juridical entity separate from the CITY OF HARLINGEN and should not be named as a party to this lawsuit as a matter of law.

Finally, there is no evidence that Plaintiff was deprived of any constitutional or other federally protected right as a result of an official policy, practice or custom of the CITY OF

HARLINGEN and, therefore, DEFENDANT CITY OF HARLINGEN is entitled to summary judgment as a matter of law.

## UNDISPUTED AND INDISPUTABLE MATERIAL FACTS

On July 27, 2000, OFFICER SILVA observed the Plaintiff pick up a yellow hard-sided suitcase from baggage claim at the Valley International Airport in Harlingen. The plaintiff was observed walking outside the terminal area towards the taxicabs, then back towards the terminal to the benches, finally back towards the taxicabs. DEFENDANT SILVA approached Plaintiff just outside the Valley International Airport, identified himself as an officer, displayed his credentials, and asked for a consensual interview with him. *See Exhibits A-1 and A-2.* During the course of this interview, OFFICER MARTINEZ joined OFFICER SILVA in the interview, and likewise identified himself to Plaintiff. As a part of this interview, SILVA and MARTINEZ inquired as to Plaintiff's identification, where Plaintiff was traveling from, the purpose of his trip, and whether he was carrying anything illegal or large amounts of currency. *See Exhibits A-1 and A-2.*

Plaintiff informed DEFENDANTS that he was carrying around $10,000 in cash in his bag. *See Exhibits A-1 and A-2.* Suspicious of the amount of cash, DEFENDANTS asked Plaintiff if they could search his bags and count the currency contained therein. Plaintiff denied consent to search his bags. At this time, DEFENDANTS asked Plaintiff if he would bring his bags into the terminal for a K-9 dog check, to which Plaintiff agreed. *See Exhibits A-1 and A-2.*

DEFENDANT MARTINEZ then had the K-9 dog "Fasco", a trained and certified drug dog, conduct a check of the bags. The dog alerted to the odor of narcotics in both bags. Based on the K-9 alert to the baggage, DEFENDANTS notified Plaintiff that the

baggage would be seized and a search warrant obtained for them. *Exhibit A-2.* Plaintiff was issued receipt for both pieces of baggage and DEFENDANTS obtained search warrants from Justice of the Peace Sallie Gonzalez. The search warrants were executed and clothing was found, along with currency in the amount of $18,110 in large denominations. *See Exhibit A-2.* The K-9 dog Fasco made an alert to the seized currency. DEFENDANT SILVA then had the currency recounted at Texas State Bank, a cashier's check was issued in that amount, and the currency was filed with the Cameron County District Attorney's Office in Brownsville.

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits and discovery on file "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *see also Celotex Corp. vs. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but the party need not negate the elements of the non-movant's case. *Celotex*, 477 U.S. at 323; *Little vs. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The plain language of FRCP 56(c) mandates the entry of a summary judgment against a party "who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in *any* case 'where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"

*Little*, 37 F.3d at 1075 (quoting *Armstrong vs. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)).

### GROUNDS FOR SUMMARY JUDGMENT

There are no genuine issues of material fact, and therefore CITY DEFENDANTS are entitled to summary judgment on the following grounds:

1.  There is no evidence that Individual DEFENDANTS SILVA or MARTINEZ wrongfully stopped, interrogated, or detained Plaintiff or seized any of his property in violation of his constitutional rights and each of the Individual DEFENDANTS is entitled to Qualified Immunity as a matter of law;

2.  DEFENDANT VIA, as a department of the CITY OF HARLINGEN, is not a proper party to this action as it has no separate juridical existence; and,

3.  There is no evidence that Plaintiff's constitutional rights were violated by a custom, policy or practice of the CITY OF HARLINGEN, as he was stopped, detained, and had his luggage seized pursuant to probable cause by the Officers.

### ARGUMENTS AND AUTHORITY

**I.  Summary Judgment Evidence Establishes That as a Matter of Law, The Plaintiff's Stop, Detention and Seizure of Baggage Was Lawful, and Therefore, Officers Silva and Martinez Are Entitled to Qualified Immunity.**

Plaintiff alleges that OFFICERS SILVA and MARTINEZ wrongfully stopped and detained him without probable cause and seized and searched his property without probable cause. However the summary judgment evidence shows that OFFICERS SILVA and MARTINEZ actions were lawful because adequate probable cause existed for the detention of Plaintiff and seizure and search of the property.

Under federal law, Individual DEFENDANTS SILVA and MARTINEZ are entitled to assert the affirmative defense of qualified immunity.  To overcome this qualified immunity, a plaintiff must demonstrate that a defendant's alleged misconduct was in violation of a clearly established constitutional right under the current state of the law and that the defendant's conduct was not objectively reasonable in light of "clearly established" law at the time of the alleged violation.  *Goodson,* 202 F.3d 730, 736 (5th Cir. 2000) (citing *Siegert v. Gilley,* 500 U.S. 226 (1991)). The qualified immunity defense "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 228 (1991)(quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

The undisputed facts and summary judgment evidence show that OFFICER SILVA first approached Plaintiff on July 27, 2000 in accordance with his duties as a police officer, and engaged him in a consensual interview and asked him for his identification. *See Exhibit A-2.*  DEFENDANT MARTINEZ then joined him in this consensual interview.  DEFENDANTS SILVA and MARTINEZ could approach Plaintiff, as they could approach anyone on the street, and ask permission to ask questions or ask for identification. *See Florida v. Bostick,* 501 U.S. 429, 435 (1991).  ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual ... [and] ask to examine the individual's identification ... as long as the police do not convey a message that compliance with their request is required." (citations omitted)); *United States v. Cooper,* 43 F.3d 140, 145 (5th Cir.1995). ("[A] consensual encounter ... may be initiated by the police without any

objective level of suspicion."). Thus OFFICERS SILVA and MARTINEZ, in initially approaching Plaintiff for a consensual encounter and request for identification, were acting in a completely lawful fashion and Plaintiff has no evidence of a violation of any his rights regarding such consensual encounter.

The evidence shows that during the course of this consensual interview, Plaintiff admitted to having a large amount of cash in his luggage, around $10,000. *See Exhibits A-1, A-2.* Based on this piece of information, OFFICERS SILVA and MARTINEZ requested a search of the luggage to count the currency contained in the bag. Plaintiff denied such search. It was at this time that the Individual DEFENDANT OFFICERS informed the Plaintiff that due to his statements regarding large amounts of currency in the bag and denial of a search, that they would like to have the baggage held for a K-9 drug dog check, to which Plaintiff did in fact consent. *See Exhibits A-1 & A-2.* Thus the K-9 check of the luggage was completely consensual and none of Plaintiff's rights were violated with respect to such search.

Although the K-9 check of the luggage was consensual, by holding Plaintiff's baggage for a K-9 check, the Individual DEFENDANTS conduct was still objectively reasonable in light of "clearly established" law at the time of the alleged violation. The Officers were performing a discretionary function normally performed by police officers, and were reasonable in their belief that probable cause existed to hold the luggage until a K-9 check could be conducted. Plaintiff admitted to carrying around $10,000 in cash in his luggage. The carrying of such a large amount of cash in a luggage is certainly not ordinary behavior, and is commonly seen in the drug trade. Therefore, based on this information, the DEFENDANTS had probable cause to

suspect that the Plaintiff was engaging in illegal activity or had engaged in illegal activity at the time they requested the K-9 check.

The K-9 dog "Fasco" alerted to the odor of narcotics in both pieces of luggage. *See Exhibits A-1 & A-2.* DEFENDANT MARTINEZ, as a trained and certified K-9 officer, identified the fact that the dog alerted to the scent of odor of narcotics. Additionally during this time, Plaintiff had told DEFENDANT SILVA that he traveled to Florida to purchase a tractor trailer with the assistance of his father, and that is the reason he had the money. Earlier, he had told DEFENDANT SILVA that he traveled to Florida to visit his wife and children. *See Exhibit A-2.*

Based on the K-9 dog alert to drugs in the luggage, as well as the Plaintiff's apparent inconsistent stories and statement that he was carrying a large amount of cash, DEFENDANTS seized the luggage. In seizing such luggage, DEFENDANTS were performing a discretionary function normally performed by police officers, and were reasonable in their belief that probable cause existed to seize and search the luggage. The carrying of a very large amount of cash in travel is routinely done by drug traffickers. Further, and most importantly, a trained and certified canine drug dog alerted to the luggage as containing drugs. Police officers rely on such K-9 drug detection methods often, as one of the more effective means of detecting hidden illegal narcotics, and this dog in particular has been instrumental with the Harlingen Police Department and other law enforcement agencies in the detection of a variety narcotics and large amounts of money, as indicated by DEFENDANT SILVA. *See Exhibit A-1.* Given the drug dog's alert to the luggage and the reliability of the dog, DEFENDANTS had probable cause to believe

that Plaintiff was engaged in the trafficking of drugs. *See Jennings v. Joshua I.S.D.*, 877 F.2d 313, 318 (5th Cir. 1989)(Officer's belief in the existence of probable cause where drug dog alerted to odor was not objectively unreasonable given the proven reliability of the dog).

Further, Plaintiffs unverified contention in his pleadings that the dog did not in fact alert does not defeat the assertion of qualified immunity. *Jones v. Fountain*, 121 F.Supp.2d 571, 574 (E.D. Tex. 2000). The dispositive issue on the probable cause element is whether the DEFENDANT OFFICERS objectively and reasonably believed that the dog alerted to the presence of narcotics. *Id.* That the Individual DEFENDANTS reasonably believed that the dog Fasco alerted to the presence of drugs is evident in the sworn affidavit submitted for a search warrant, along with the police report. *See Exhibits A-1, A-2*. The qualified immunity determination is only concerned with the objective reasonableness of the officer's actions, not the subjective beliefs of the plaintiff. *See Kipps v. Caillier*, 197 F.3d 765, 769 (5th Cir. 1999), *reh'g en banc denied)*, 205 F.3d 203 (5th Cir. 2000).

Upon seizure of the luggage, DEFENDANT SILVA then sought and received a search warrant for the luggage. In filling out and signing the affidavit for the search warrant, DEFENDANT SILVA was performing a discretionary function normally performed by police officers, and, for each of the foregoing reasons, was reasonable in his belief that probable cause existed to search the baggage. Furthermore, after a check of the Plaintiff's criminal record, it was discovered that he had previously been arrested in Florida, from where he was returning, for possession of drugs. *See Exhibit A-1*. This piece of information, along with the drug dog alert and the amount of cash gave the Individual DEFENDANTS reasonable belief that probable cause

existed in seeking the search warrant. Only where the warrant
application is so lacking in probable cause as to render
official belief in its existence unreasonable ... will the
shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335,
341 (1986).

Prior to any search of the bags, a valid search warrant was
issued by Justice of the Peace Sallie Gonzalez. *See Exhibit A-
1.* A facially valid warrant gives an officer probable cause.
*Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir. 1992).
Plaintiff luggage was searched under the authority of a valid
search warrant and, therefore, there was probable cause for the
search.

Thus DEFENDANTS seizure of the luggage, request of a search
warrant, and subsequent search of the luggage were not lacking
in probable cause. It is important to remember that an
officer's entitlement to qualified immunity based on probable
cause is difficult for a plaintiff to disturb. *See Brown v.
Lyford*, 243 F.3d 185, 190 n.7 (5th Cir. 2001)(holding that "[a]
plaintiff must clear a significant hurdle to defeat qualified
immunity" and that there "must not even arguably be probable
cause for the search and arrest for immunity to be lost")
(internal quotation omitted). With respect to DEFENDANTS
actions in holding the Plaintiff's luggage, conducting a K-9
search and then seizing and searching the luggage, DEFENDANTS at
all times had a reasonable belief that probable cause existed to
take each of the actions.

As further proof of the reasonableness of the DEFENDANTS
regarding their belief that probable cause existed to seize and
search the luggage, after the luggage was properly searched, a
total of $18,110, in mostly large denominations, was found
contained in the luggage. *See Exhibits A-2 & A-3.* This is
clearly an excessively large amount of currency not routinely
carried by legitimate travelers. Additionally, the drug dog
Fasco made an alert to the odor of narcotics on the currency

itself.  *See Exhibit A-2.*  Furthermore, a blanket was found in the luggage, and blankets are commonly used by drug traffickers to conceal narcotics in luggage.  *See Exhibit A-2.*

For each of the foregoing reasons, DEFENDANTS are entitled to summary judgment from Plaintiff's malicious prosecution claims as well as Plaintiff's false imprisonment claims.  Both of these claims require a showing of no probable cause. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). The elements of a malicious prosecution claim are: 1) the state commences a criminal prosecution against the plaintiff; 2) the defendants caused or aided the prosecution; 3) the prosecution terminated in plaintiff's favor; 4) the plaintiff was innocent; 5) the defendants acted without probable cause; 6) the defendants acted with malice; and 7) the criminal proceeding damaged the Plaintiff.  *See Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999).

While DEFENDANTS would point out Plaintiff has no evidence to establish *any* of the above elements, DEFENDANTS would particularly point to Plaintiff's inability to satisfy elements 5 and 6 of this cause of action.  Not only does Plaintiff have no evidence to establish such claims, but the competent summary judgment evidence establishes that the DEFENDANTS did indeed have probable cause and did not act with malice, for each of the reasons laid out above.  Thus DEFENDANTS are entitled to summary judgment as a matter of law with respect to this claim.  Each of the individual DEFENDANTS has qualified immunity to these claims if they had probable cause to believe that the Plaintiff committed a crime.  The supporting evidence conclusively establishes that the DEFENDANTS are entitled to qualified immunity, as this probable cause did exist.

Additionally, Plaintiff brings a 42 U.S.C. §1981 claim. Racial discrimination claims under this section are subject to the defense of qualified immunity as well.  *See Saunders v. Bush*, 15 F.3d 64 (5th Cir. 1994)(barring section 1981 claim due

to absolute and qualified immunity of defendants). For each of the reasons above, DEFENDANTS are entitled to qualified immunity from Plaintiff's §1981 cause of action, as Plaintiff has no evidence to overcome DEFENDANTS qualified immunity defense.

Particularly, Plaintiff has no evidence that DEFENDANTS violated a clearly established statutory right of his, nor that defendant's conduct was not objectively reasonable in light of "clearly established" law at the time of this incident. In fact, the competent evidence establishes that DEFENDANTS' conduct with respect to Plaintiff was objectively reasonable in light of the clearly established law.

Lastly, Plaintiff brings 42 U.S.C. §1985 conspiracy claims. DEFENDANTS are entitled to qualified immunity from such conspiracy claims, as DEFENDANTS, as laid out above, are entitled to qualified immunity from all underlying statutory claims in which Plaintiff has alleged DEFENDANTS conspired.

The evidence and facts show that the actions of both individual DEFENDANTS were objectively reasonable under the circumstances, and Plaintiff has no evidence to the contrary. Thus, OFFICERS SILVA and MARTINEZ are entitled to qualified immunity from all claims, and as there is no genuine issue of material fact with respect to the claims against them, should be granted summary judgment as to Plaintiff's claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

## II. Defendant Valley Int'l Airport Is Not a Juridical Entity Separate from the City of Harlingen and Should Not Be Named as a Party to this Lawsuit as a Matter of Law.

Plaintiffs has named the VALLEY INT'L AIRPORT ("VIA") as a defendant in this matter. VIA is an administrative department for the CITY OF HARLINGEN. As a department or agency for the CITY OF HARLINGEN, VIA is not a separate legal/jural entity from CITY. *See Brooks v. Klevenhagen*, 807 S.W.2d 777, 778 (Houston [14th Dist.] 1991, no writ). (finding the Harris County Sheriff's Department Civil Service Commission to be an administrative agency). Governmental offices and departments do

not have a separate legal existence apart from the legal entity of which they are a part. *See Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1988); *Prenosil v. Dallas County Jail,* No. 3-93-CV-1130-D, op. at 2 (N.D. Tex. 1995) (Fitzwater, J.) (Dallas County Health Department not a proper defendant with jural existence).

The capacity of an entity to sue or be sued "shall be determined by the law of the state in which the district court is held." Fed.R.Civ.P. 17(b). Under Texas law, the touchstone is whether the entity has been granted the capacity "to sue and be sued." *Dillon v. Jefferson County Sheriff's Department*, 973 F.Supp. 626, 627 (E.D. Tex. 1997). Texas law requires that public administrative bodies have statutory authority in order to sue or to become a defendant in a lawsuit. *Texas Employers' Ins. Ass'n v. Elder*, 155 Tex. 27, 282 S.W.2d 371, 376 (1955); *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 735 (Tex.App. - Corpus Christi 1994, writ denied). Employing that rule, VIA does not have the authority to sue or be sued by others. Therefore, VIA should be dismissed from this proceeding.

**III.   The Summary Judgment Evidence Establishes That Plaintiff Was Not Deprived of Any Constitutional Or Other Federally Protected Right as a Result of an Official Policy, Practice or Custom of the City of Harlingen, Texas.**

To recover a judgment against a local governmental body under Section 1983, a Plaintiff must allege and establish that he sustained a deprivation of constitutional or other federally protected rights as a result of some official policy, practice or custom of that governmental entity. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Whereas, an official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by

officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. *See Aestivus v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997); *Cole v. Brazos County, Texas*, 981 F.2d 237, 244-45 (5th Cir. 1993).

*Monell* held that a governmental entity can be found liable under Section 1983 only if the entity itself causes the constitutional violation at issue. *Monell*, 436 U.S. at 690-91. In other words, *respondeat superior* or vicarious liability cannot be a basis for recovery under Section 1983. *Id.* at 691-94. It is only when the execution of the government's policy or custom that inflicts injury can the governmental entity be held liable under Section 1983. See *Prairie v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992).

The City is entitled to summary judgment because the Plaintiff cannot establish an official policy, or a custom or practice of violating constitutional or statutory rights. There is no evidence that the City's final policy-makers have effectively made a policy or condoned the creation of a custom by knowingly ratifying any unconstitutional or illegal actions of its officers or employees.

Isolated instances of official misconduct by a governmental entity's non-policy-making employees are inadequate to prove knowledge and acquiescence by the entity's policy-makers. *Id.* at 1278. A single incident cannot serve as the basis of liability against the government entity. *See Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir. 1989)(citing *City of Oklahoma vs. Tuttle*, 471 U.S. 808 (1985)).

In this case, Plaintiff is complaining about a single incident where a detention and lawful search and seizure are

involved. While Plaintiff alleges he was illegally stopped and detained and had his baggage illegally seized and searched pursuant to official policy of the CITY OF HARLINGEN, he has failed to provide evidence of or even allege any specific facts demonstrating an official policy or custom that resulted in the illegal stop and detention of Plaintiff, and the illegal seizure of his baggage. *See Bennett v. City of Grand Prairie,* 883 F.2d 400, 410 (5th Cir. 1989). As the evidence demonstrates, the Plaintiff's stop and detention were legal, as was the search and seizure of this baggage, and none of this violated any of Plaintiff's rights.

The police report and affidavit submitted for the search warrant establish that the Plaintiff was initially stopped pursuant to a consensual interview, detained pursuant to probable cause and had his baggage seized and searched pursuant to probable cause and a valid search warrant. Such actions hardly rise to the level of showing a pattern, practice, policy or custom of unconstitutional consensual stops, detentions and seizures by the CITY OF HARLINGEN.

Further, even where a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable under Section 1983. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 121-22 (1988) (plurality opinion); *see also McConney v. City of Houston,* 863 F.2d 1180, 1184 & n.2 (5th Cir. 1989).

With respect to Plaintiff's claims against the CITY OF HARLINGEN, there can be no genuine issue of material fact and, therefore, the CITY OF HARLINGEN, TEXAS is entitled to Summary Judgment as a matter of law.

### CONCLUSION & PRAYER

THEREFORE, based on any one or more of the foregoing reasons, the CITY DEFENDANTS hereby request that the Court order the following relief:

City Defendants' Dispositive Motion
& Assertion of Qualified Immunity                                    Page 17

1.  That the Court grant CITY DEFENDANTS' Motion for Summary Judgment with respect to Plaintiff's claims against the INDIVIDUAL DEFENDANTS in their individual and official capacities;

2.  That the Court dismiss DEFENDANT VALLEY INT'L AIRPORT from this litigation as not a properly named party; and,

3.  That the Court grant CITY DEFENDANTS' Motion for Summary Judgment with respect to Plaintiff's claims against the CITY OF HARLINGEN.

CITY DEFENDANTS further requests that upon final hearing of this case, that all relief sought by Plaintiff be denied, that a take nothing judgment against Plaintiff be entered.

Finally, CITY DEFENDANTS request any other additional and further relief, at law or in equity, to which they may be entitled.

SIGNED on the ___30th___ day of December, 2002.

Respectfully Submitted,

**DENTON, NAVARRO, ROCHA & BERNAL**
A Professional Corporation
Bank of America Building
222 E. Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _____
RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. ID No. 5953

By: _____
ROBERT DRINKARD
State Bar No. 24007128
Fed. Dist. No. 29288

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been sent by Regular U. S. Mail, postage prepaid, unless otherwise indicated, to the person(s) listed below on this _30th_ day of December, 2002.

Daniel G. Rios                    **By CMRRR: 7002 1000 0004 8591 1192**
LAW OFFICES OF DANIEL G. RIOS, P.C.
323 Nolana Loop
McAllen, Texas 78504
COUNSEL FOR PLAINTIFF

Francisco Rios
Assistant County Attorney
Cameron County Courthouse
974 East Harrison Street
Brownsville, Texas 78520
COUNSEL FOR CAMERON COUNTY

RICARDO J. NAVARRO
ROBERT DRINKARD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CLINTON R. BROWN                        §
        Plaintiff                    §
VS                                      §          C.A. NO. B-02-142
                                        §
CITY OF HARLINGEN, TEXAS                §
VALLEY INT'L AIRPORT                    §
LEONEL SILVA &                          §
RAMIRO MARTINEZ, ET. AL.                §
        Defendants                   §

INDEX TO EXHIBITS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

---

A.   Custodial Affidavit/Seal of City of Harlingen Police
     Department authenticating as business records:

    1.   Search warrants for Plaintiff's baggage, with
          affidavits in support;

    2.   Harlingen Special Investigations Police Report;

    3.   Photos of contents of Plaintiff's baggage

**EXHIBIT" _____ "**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CLINTON R. BROWN                    §
      Plaintiff                §
                                    §
VS                                  §
                                    §        CIVIL ACTION NO. B-02-142
CITY OF HARLINGEN, TEXAS            §
VALLEY INT'L AIRPORT               §
LEONEL SILVA &                      §
RAMIRO MARTINEZ, ET. AL.           §
      Defendants               §

AFFIDAVIT OF JANE STOUT
CITY OF HARLINGEN, TEXAS POLICE DEPARTMENT

_____

STATE OF TEXAS            §

COUNTY OF CAMERON         §


Before me, the undersigned authority, personally appeared Jane Stout, who, being by me duly sworn, deposed as follows:

My name is Jane Stout, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am a custodian of records of the City of Harlingen Police Department. Attached hereto are 22 pages of records from the City of Harlingen Police Department. These said 22 pages of records are kept by the Harlingen Police Department in the regular course of business, and it was the regular course of business of the City of Harlingen Police Department for an employee or representative of the City of Harlingen Police Department, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and

Brown vs. City of Harlingen: Affidavit of Jane Stout                    Page 1

the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

JANE STOUT
CUSTODIAN OF RECORDS
CITY OF HARLINGEN, TEXAS P.D.


SWORN TO AND SUBSCRIBED before me on the 30TH day of DECEMBER, 2002.

Notary Public, State of Texas

Printed Name: ALFREDO ALVEAR

My commission expires: 12/20/04

ALFREDO ALVEAR
MY COMMISSION EXPIRES
December 20, 2004

Brown vs. City of Harlingen: Affidavit of Jane Stout                Page 2



## POLICE DEPARTMENT

CITY OF
**HARLINGEN**
T E X A S

30 December 2002

To Whom It May Concern:

The Records Division of the Harlingen Police Department deems and
certifies that the attached is a true and correct copy of an original
Records document in the Records Division of the Harlingen Police
Department.

Jane Stout, Records Manager
Harlingen Police Department

Date: 12/30/02

P.O. BOX 1631 • HARLINGEN, TEXAS 78551 • (956) 427-8750 • FAX (956) 427-8794

**EXHIBIT"** _A-1_ **"**

Location / item to be searched: _Black Suit-Sized Bag_

## SEARCH WARRANT

**THE STATE OF TEXAS**

**COUNTY OF CAMERON**

THE STATE OF TEXAS to the Sheriff or any Peace Officer of Cameron County, Texas or any Peace Officer of the State of Texas, Greeting:
Whereas, the Affiant whose name appears on the attached affidavit is a Peace Officer under the laws of Texas and did heretofore this day subscribe and swear to said affidavit before me (which said affidavit is here now made part of hereof for all purposes), and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief expressed therein and establish existence of proper grounds for issuance of this Warrant; now, therefore, you are commanded to enter the suspected place described in said Affidavit and to seize same and to arrest and bring before me each suspected party named in said affidavit.
Furthermore, you are ORDERED, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this Warrant, until further order of this Court or any property. This Court grants you leave and authority to remove such seized property from this County, if and only if such removal is necessary for the safekeeping of such seized property by you, or if such removal is otherwise authorized by the provisions of Article 18.10, T.C.C.P., of the place where the property seized hereunder is kept, stored and held.
HEREIN FAIL NOT, but have you then and there this Warrant within three days, exclusive of the day of it's issuance and exclusive of the day of it's execution, with your return thereon, showing how you have executed the same, filed in this Court.
ISSUED THIS THE _27_ DAY OF _July_, A.D., 2000, at _2:55_ O'CLOCK _P_.m. to certify which witness my hand this day.

_____
MAGISTRATE

**AFFIDAVIT**

**THE STATE OF TEXAS**
**COUNTY OF CAMERON**

**THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF
TEXAS AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING
STATEMENTS AND ACCUSATIONS.**

My name is Leonel Silva and I am employed with the City of
Harlingen Police Department assigned as the Acting Director to
the Special Investigations Unit.

**THERE IS IN CAMERON COUNTY, TEXAS A SUSPECTED BLACK SOFT-SIDED
BAG DESCRIBED AND LOCATED AS FOLLOWS:**

A small black soft-sided carry-on bag.  The bag had the
inscription of "Isle of Capri Casino & Hotel" on both sides and
being carried by Clinton Reginald BROWN (07-23-71).

**SAID SUSPECTED BLACK SOFT-SIDED BAG IS IN CHARGE OF AND
CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES (HEREAFTER
CALLED "SUSPECTED PARTY") WHETHER ONE OR MORE TO WIT:**

A. Party or Parties Presently Unknown to Your Affiant

B. Clinton BROWN (07-23-71)

C.

**IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND
ACCUSES THAT SAID PARTY HAS POSSESSION OF AND IS CONCEALING AT
SAID SUSPECTED BLACK SOFT-SIDED BAG IN VIOLATION OF THE LAWS OF
TEXAS THE FOLLOWING DESCRIBED PERSONAL PROPERTY, TO WIT:**

A. Evidence of the crime of conspiracy to possess, possession,
attempted possession of a Narcotic Drug Controlled Substance(s)
as well illegal investment and engaging in organized criminal
activity, in violation of the Texas Health and Safety Code
Section of the Texas Penal Code.  Said evidence to include, but
not limited to the following: Quantities of Cocaine and
Marijuana, residue of Cocaine and Marijuana, narcotics
paraphernalia, including but not limited to adulterants,
diluents, packaging, containers, strainers, measuring spoons,
scales, weights, and other instrumentalities of narcotics
activities, papers, documents, electronic paging device(s),
cellular telephone(s), records, ledgers, tally sheets, telephone
books, address books, money wrappers, and other papers reflecting

narcotics activity proceeds of narcotics distribution, evidence of money laundering activity, safe deposit box records and keys, photographs of co-conspirators, papers identifying offenses, firearms, all ammunition, evidence of firearm ownership, documents relating to firearms and their ownership, evidence of and property designed and intended for use and which is being and has been used as the means of committing the aforesaid offense.

**AFFIANT HAS PROBABLE CAUSE FOR THE SAID BELIEF BY REASON OF THE FOLLOWING FACTS, TO WIT:**

A. Your Affiant has been a Police Officer of the city of Harlingen, Texas since 1979, and was assigned to the Harlingen Detective Division in 1983.  In 1990, your Affiant was assigned to the United States Department of Justice, Drug Enforcement Administration(DEA)Drug Task Force.  In May of 2000, Your Affiant ended his tour with the DEA and is currently the Acting Director of the Harlingen Police Department's Special Investigations Unit(SIU).  Your Affiant is authorized to enforce the State and Local Drug laws and to execute arrest and search warrants.  Your Affiant has been an officer for over twenty-one years.  Your Affiant has attended a basic police officer academy training followed with training in investigator schools and numerous training of narcotic related investigations through out the twenty-one years.  The training your Affiant received focused on the methods of operations utilized by narcotics traffickers.

B. On Thursday, July 27, 2000 at approximately 1:10pm, members of the Harlingen Police Drug Interdiction unit (SIU) observed a suspicious black male subject carrying two pieces of baggage at the Harlingen Airport in Harlingen, Texas. Investigators and officers are routinely assigned to work at the airport as well as other freight service companies as part of the Harlingen Police Drug Interdiction unit. Narcotic Investigators and officers have had great success in intercepting narcotics and narcotics trafficking currency. Investigators and officers have found that narcotics traffickers will conceal narcotics and narcotics currency in their person, baggage, parcel and freight packages. Narcotics Investigators and officers have seized large sums of narcotic trafficking currency and large amounts of illicit drugs through the various parcel and freight companies.

C. One of the bags was described as a small black soft-sided carry-on bag.  The bag had the inscription of "Isle of Capri Casino & Hotel" on both sides and being carried by Clinton Reginald BROWN (07-23-71).  BROWN was observed picking up a yellow hard sided suitcase from the Southwest Airlines baggage claim area of the airport.  BROWN walked outside the terminal area towards the taxi cab parking lot.  BROWN then walked back to the terminal area and sat on the outside benches.  After a few

minutes later, BROWN walked towards the taxi cabs.

D. Your Affiant approached BROWN and identified myself as a
police officer and displayed my credentials and asked if your
Affiant could speak to him.  BROWN consented.  Your Affiant asked
BROWN for some type of identification.  BROWN produced a Texas
driver's license under his name.  Your Affiant asked BROWN where
he had arrived from.  BROWN stated that he had gone to visit his
wife in Florida and was returning to his home in McAllen, Texas.
Your Affiant asked BROWN if he was carrying anything illegal or
any large amounts of currency.  BROWN evaded the question and
your Affiant asked BROWN again.  BROWN stated that he had some
money in his bag.  Your Affiant asked how much currency he had.
BROWN stated that he had about $10,000 in the black bag.  Your
Affiant asked BROWN if the currency could be counted and BROWN
denied consent.  Your Affiant informed BROWN that a drug
detection canine would be utilized on both pieces of baggage.

E. Harlingen Police Canine Officer Ramiro Martinez utilized his
certified and trained K-9 "Fasco" to the suspicious pieces of
baggage.  "Fasco" made an alert to the suspicious pieces of
baggage to the odor of narcotics.  "Fasco" has been instrumental
with the Harlingen Police Department and various other law
enforcement agencies in the detection of large amounts of
marijuana, cocaine, heroin and other narcotics as well as the
detection of large amounts of U.S. Currency.

F. Your Affiant checked the criminal history of BROWN and
discovered that he had been arrested before for possession of
marijuana and drug paraphernalia in Florida.

G. Your Affiant has observed similar suspicious pieces of baggage
in the past which contained large amounts of cocaine and
marijuana and U.S. currency.  Drug traffickers will carry and
ship their illicit drugs and currency through various ways such
as this method to avoid detection by law enforcement officers.

**WHEREFORE, AFFIANT ASKS FOR ISSUANCE OF A WARRANT THAT WILL
AUTHORIZE THE SEARCH OF SAID SUSPECTED BLACK SOFT-SIDED BAG FOR
SAID PERSONAL PROPERTY AND SEIZURE OF THE SAME AND FOR THE ARREST
OF SAID SUSPECTED PARTY, AND TO TAKE CUSTODY OF ALL SEIZED
PROPERTY AND SAFEKEEP SUCH PROPERTY AS PROVIDED BY STATUTE.**

_____
**Affiant**

SUBSCRIBED AND SWORN TO BEFORE ME BY SAID AFFIANT ON THIS 27

DAY OF _____, 2000.

_____
**MAGISTRATE**

Location / item to be searched: _Yellow Hardsided Suitcase_

# SEARCH WARRANT

**THE STATE OF TEXAS**

**COUNTY OF CAMERON**

        THE STATE OF TEXAS to the Sheriff or any Peace Officer of Cameron County, Texas or any Peace Officer of the State of Texas, Greeting:
        Whereas, the Affiant whose name appears on the attached affidavit is a Peace Officer under the laws of Texas and did heretofore this day subscribe and swear to said affidavit before me (which said affidavit is here now made part of hereof for all purposes), and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief expressed therein and establish existence of proper grounds for issuance of this Warrant; now, therefore, you are commanded to enter the suspected place described in said Affidavit and to seize same and to arrest and bring before me each suspected party named in said affidavit.
        Furthermore, you are ORDERED, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this Warrant, until further order of this Court or any property.  This Court grants you leave and authority to remove such seized property from this County, if and only if such removal is necessary for the safekeeping of such seized property by you, or if such removal is otherwise authorized by the provisions of Article 18.10, T.C.C.P., of the place where the property seized hereunder is kept, stored and held.
        HEREIN FAIL NOT, but have you then and there this Warrant within three days, exclusive of the day of it's issuance and exclusive of the day of it's execution, with your return thereon, showing how you have executed the same, filed in this Court.
        ISSUED THIS THE ___27___ DAY OF ___July___, A.D., 2000, at __2:59__ O'CLOCK _P_ .m. to certify which witness my hand this day.


                              _Dallie Gonzalez_
                            MAGISTRATE

**AFFIDAVIT**

**THE STATE OF TEXAS**
**COUNTY OF CAMERON**

**THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF TEXAS AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS.**

My name is Leonel Silva and I am employed with the City of Harlingen Police Department assigned as the Acting Director to the Special Investigations Unit.

**THERE IS IN CAMERON COUNTY, TEXAS A SUSPECTED YELLOW HARD-SIDED SUITCASE DESCRIBED AND LOCATED AS FOLLOWS:**

A medium size yellow hard-sided suitcase.  The suitcase had Southwest Airlines Claim tag #80-73-11-72 Flight #11 from Houston to Harlingen.  The suitcase had no identification nor name tag attached to it.  The suitcase was being carried by Clinton Reginald BROWN (07-23-71).

**SAID SUSPECTED YELLOW HARD-SIDED SUITCASE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES (HEREAFTER CALLED "SUSPECTED PARTY") WHETHER ONE OR MORE TO WIT:**

A.Party or Parties Presently Unknown to Your Affiant

B.Clinton BROWN (07-23-71)

C.

**IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT SAID PARTY HAS POSSESSION OF AND IS CONCEALING AT SAID SUSPECTED YELLOW HARD-SIDED SUITCASE IN VIOLATION OF THE LAWS OF TEXAS THE FOLLOWING DESCRIBED PERSONAL PROPERTY, TO WIT:**

A. Evidence of the crime of conspiracy to possess, possession, attempted possession of a Narcotic Drug Controlled Substance(s) as well illegal investment and engaging in organized criminal activity, in violation of the Texas Health and Safety Code Section of the Texas Penal Code.  Said evidence to include, but not limited to the following: Quantities of Cocaine and Marijuana, residue of Cocaine and Marijuana, narcotics paraphernalia, including but not limited to adulterants, diluents, packaging, containers, strainers, measuring spoons, scales, weights, and other instrumentalities of narcotics activities, papers, documents, electronic paging device(s),

cellular telephone(s), records, ledgers, tally sheets, telephone
books, address books, money wrappers, and other papers reflecting
narcotics activity proceeds of narcotics distribution, evidence
of money laundering activity, safe deposit box records and keys,
photographs of co-conspirators, papers identifying offenses,
firearms, all ammunition, evidence of firearm ownership,
documents relating to firearms and their ownership, evidence of
and property designed and intended for use and which is being and
has been used as the means of committing the aforesaid offense.

**AFFIANT HAS PROBABLE CAUSE FOR THE SAID BELIEF BY REASON OF THE
FOLLOWING FACTS, TO WIT:**

A. Your Affiant has been a Police Officer of the city of
Harlingen, Texas since 1979, and was assigned to the Harlingen
Detective Division in 1983.  In 1990, your Affiant was assigned
to the United States Department of Justice, Drug Enforcement
Administration(DEA)Drug Task Force.  In May of 2000, Your Affiant
ended his tour with the DEA and is currently the Acting Director
of the Harlingen Police Department's Special Investigations
Unit(SIU).  Your Affiant is authorized to enforce the State and
Local Drug laws and to execute arrest and search warrants.  Your
Affiant has been an officer for over twenty-one years.  Your
Affiant has attended a basic police officer academy training
followed with training in investigator schools and numerous
training of narcotic related investigations through out the
twenty-one years.  The training your Affiant received focused on
the methods of operations utilized by narcotics traffickers.

B. On Thursday, July 27, 2000 at approximately 1:10pm, members of
the Harlingen Police Drug Interdiction unit (SIU) observed a
suspicious black male subject carrying two pieces of baggage at
the Harlingen Airport in Harlingen, Texas. Investigators and
officers are routinely assigned to work at the airport as well as
other freight service companies as part of the Harlingen Police
Drug Interdiction unit. Narcotic Investigators and officers have
had great success in intercepting narcotics and narcotics
trafficking currency. Investigators and officers have found that
narcotics traffickers will conceal narcotics and narcotics
currency in their person, baggage, parcel and freight packages.
Narcotics Investigators and officers have seized large sums of
narcotic trafficking currency and large amounts of illicit drugs
through the various parcel and freight companies.

C. One of the bags was described as a small black soft-sided
carry-on bag.  The bag had the inscription of "Isle of Capri
Casino & Hotel" on both sides and being carried by Clinton
Reginald BROWN (07-23-71).  BROWN was observed picking up a
yellow hard sided suitcase from the Southwest Airlines baggage
claim area of the airport.  BROWN walked outside the terminal

area towards the taxi cab parking lot.  BROWN then walked back to
the terminal area and sat on the outside benches.  After a few
minutes later, BROWN walked towards the taxi cabs.

D. Your Affiant approached BROWN and identified myself as a
police officer and displayed my credentials and asked if your
Affiant could speak to him.  BROWN consented.  Your Affiant asked
BROWN for some type of identification.  BROWN produced a Texas
driver's license under his name.  Your Affiant asked BROWN where
he had arrived from.  BROWN stated that he had gone to visit his
wife in Florida and was returning to his home in McAllen, Texas.
Your Affiant asked BROWN if he was carrying anything illegal or
any large amounts of currency.  BROWN evaded the question and
your Affiant asked BROWN again.  BROWN stated that he had some
money in his bag.  Your Affiant asked how much currency he had.
BROWN stated that he had about $10,000 in the black bag.  Your
Affiant asked BROWN if the currency could be counted and BROWN
denied consent.  Your Affiant informed BROWN that a drug
detection canine would be utilized on both pieces of baggage.

E. Harlingen Police Canine Officer Ramiro Martinez utilized his
certified and trained K-9 "Fasco" to the suspicious pieces of
baggage.  "Fasco" made an alert to the suspicious pieces of
baggage to the odor of narcotics.  "Fasco" has been instrumental
with the Harlingen Police Department and various other law
enforcement agencies in the detection of large amounts of
marijuana, cocaine, heroin and other narcotics as well as the
detection of large amounts of U.S. Currency.

F. Your Affiant checked the criminal history of BROWN and
discovered that he had been arrested before for possession of
marijuana and drug paraphernalia in Florida.

G. Your Affiant has observed similar suspicious pieces of baggage
in the past which contained large amounts of cocaine and
marijuana and U.S. currency.  Drug traffickers will carry and
ship their illicit drugs and currency through various ways such
as this method to avoid detection by law enforcement officers.

**WHEREFORE, AFFIANT ASKS FOR ISSUANCE OF A WARRANT THAT WILL
AUTHORIZE THE SEARCH OF SAID SUSPECTED YELLOW HARD-SIDED SUITCASE
FOR SAID PERSONAL PROPERTY AND SEIZURE OF THE SAME AND FOR THE
ARREST OF SAID SUSPECTED PARTY, AND TO TAKE CUSTODY OF ALL SEIZED
PROPERTY AND SAFEKEEP SUCH PROPERTY AS PROVIDED BY STATUTE.**

_____
**Affiant**

SUBSCRIBED AND SWORN TO BEFORE ME BY SAID AFFIANT ON THIS ___27___
DAY OF _____,2000.

_____
**MAGISTRATE**

EXHIBIT" A-2

CASE# <u>2000-011457</u>

## HARLINGEN POLICE REPORT
## SPECIAL INVESTIGATIONS UNIT

Reporting Officer : Leonel Silva

Date of Report   : July 28, 2000

Type of Incident  : Narcotics Investigation(Seizure of $18,110 in U.S. Currency)

Location          : Valley International Airport in Harlingen, Texas

On Thursday, July 27, 2000 at approximately 1:10pm, officers of the Harlingen Police Special Investigations Unit were conducting drug interdiction duties at Valley International Airport in Harlingen, Texas. This investigator observed a lone black male subject picking up a yellow hard-sided suitcase at the baggage claim area of the airport. The subject walked outside the terminal area and towards the taxi cabs parked across the terminal. The subject then walked back towards the terminal and sat at the outside benches. The subject then placed a telephone call on his cellular telephone. After placing the telephone call, the subject then walked back towards the taxi cabs. This investigator approached the subject and identified himself and displayed his credentials. This investigator asked the subject for a consensual interview. The subject complied. Harlingen Police Officer Ramiro Martinez joined this investigator. This investigator advised the subject that he was an officer accompanying this officer. The subject was asked for some type of identification. The subject produced a Texas drivers license under the name of Clinton Reginald BROWN and listing an address in McAllen, Texas.

BROWN was asked where he had traveled from and what was the purpose of his trip. BROWN stated that he had traveled to see Tampa, Florida to see his wife and children. BROWN was asked if he was carrying anything illegal or large amounts of U.S. currency. BROWN stated that he was not carrying anything illegal, but had some currency in his carry-on bag. Officers asked BROWN how much currency he had. BROWN stated that he had about $10,000 in cash. Officers asked BROWN if the currency could be counted. BROWN denied consent to search of his bag. This investigator advised BROWN that since he admitted in having a large amount of currency, the bags would be held for a K-9 check. BROWN stated for officers to go ahead and get a K-9. BROWN was asked it he would bring the bags into the terminal area for the K-9 check. BROWN agreed and carried his bags inside the terminal baggage claim area.

While Officer Martinez was conducting a check with his K-9, this investigator asked BROWN if his wife in Florida knew that he was carrying such a large amount of currency with him. BROWN stated that she did not know. BROWN mentioned to this investigator that he had gone to Florida to buy a tractor-trailer with the assistance of his father. This investigator asked BROWN if his father knew that he was carrying such a large amount of currency on him. BROWN stated that his father did not know he had the currency. Officer Martinez utilized his certified and trained K-9 "Fasco" to both the carry-on bag and suitcase. "Fasco" alerted to both to the odor of narcotics. BROWN was advised by this investigator that he had every right to deny consent, but due the fact of the K-9 alert to the baggage, the baggage would be seized and a search warrant obtained for them. BROWN was issued a receipt for both pieces of baggage. BROWN stated that he had receipts where he had taken out $10,000 from the bank, but did not have them on him at the time. This investigator obtained a search warrant from Justice of the Peace Sallie Gonzalez for both the suitcase and carry-on bag. The search warrants were executed on the bags at approximately 3:00pm the same date.

Investigators discovered inside the carry-on bag clothing, shoes, a check book under the name of Reggie BROWN, set of keys, and in one of the pair of pants four large bundles of currency. The bundles of currency were concealed in the front pant pockets and rear pant pockets. Each of the bundles were rubber banded together. A count of the currency amounted to $18,110 in large denominations, mostly twenty dollar bills. The yellow suitcase revealed to contain some clothing and a large blanket. The carrying of the blanket appeared as if someone had carried some type of narcotics concealed within.

Due to the conflicting stories of BROWN, investigators seized the currency believed to be profits of narcotics trafficking and/or to further the purchase of narcotics. The currency was later tagged as Harlingen Police Evidence #00-011457 Tag#1 for $18,110 in U.S. currency and turned over to the Harlingen Police Evidence custodian. Investigators also tagged the Southwest Airlines baggage claim tags as evidence 00-11457 Tag#2, the carry-on bag as evidence 00-11457 Tag#3, and the yellow suitcase as evidence 00-11457 Tag#4.

On July 27, 2000, Inv. Silva asked Harlingen Police Canine Officer Ramiro Martinez to utilize his K-9 "Fasco" to the seized currency. "Fasco" made an alert to the currency to the odor of narcotics.

On July 28, 2000, BROWN came by the Harlingen Police Department to show this investigator of money he had taken out of the money from his account at IBC in McAllen on July 3, 2000, twenty-five days before his currency was seized. This investigator asked BROWN that the currency discovered inside his carry-on bag was not $10,000 as he had stated the day before. BROWN stated that he thought the currency in his carry-on bag should be around $16,000. This investigator advised BROWN that the amount of currency counted was in fact $18,110 and not $10,000 nor $16,000.

On July 28, 2000, custody of Harlingen Police Evidence #00-011457 Tag#1 for $18,110 was turned over to Inv. Silva to be taken to Texas State Bank located at 521 North 77 Sunshine Strip in Harlingen, Texas to be recounted and a cashier's check issued for their amounts. Texas State Bank issued a cashier's check #364270 for the amount of $18,110. The currency seized from BROWN will be filed with the Cameron County District Attorney's Office in Brownsville, Texas.

Investigators seized the currency based on the foregoing facts:

A. BROWN was traveling with an amount of currency not routinely carried by legitimate travelers.
B. BROWN was carrying currency that an experienced narcotic detecting canine alerted on to the odor of narcotics.
C. BROWN story in regards to the origin and purpose of the currency were unclear and unknown.
D. BROWN's currency was predominately in twenty and one hundred dollar bills, which is typical of currency carried by drug couriers.
E. BROWN paid for one-way plane ticket to the Rio Grande Valley, indicative of the methods that are utilized by drug traffickers.
F. BROWN admitted in having being arrested before for narcotics violations in Florida.
G. BROWN was carrying in his checked suitcase, a blanket normally used by drug traffickers to conceal their narcotics in luggage.
H. The manner in which the currency was concealed in the carry-on bag inside clothing is typical of the manner of which currency is transported by drug traffickers.

The currency seized from VEAL was as follows:

  87 x 100's = $8,700
  95 x  50's =  4,750
 233 x  20's =  4,660

        $18,110

INDEXING SECTION:

1. BROWN, Clinton Reginald (07-23-71)

    A.K.A.: Reggie

    Address: 2701 North 31st Apt#1 in McAllen, Texas 78501

    Physical identifiers: B/M, Height: 5'09", Weight: 200 lbs., Black hair, Brown eyes,

    S.S.# 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, P.O.B.: Orlando, Florida; Telephone number (956)668-9208 home,

    (956)792-3328 cellular, (956)519-7728 work; F.B.I.# 68125WA2, Florida I.D.#03807557,

    Texas D.L.# 10086328.


**LEONEL SILVA**
**Acting Director of S.I.U.**
**Harlingen Police**

EXHIBIT" _A-3_ "

















