39

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-**

United States District Court
Southern District of Texas
ENTERED

JUN 2 0 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| CLINTON R. BROWN, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-02-142 |
| CITY OF HARLINGEN, | § | |
| VALLEY INTERNATIONAL AIRPORT, | § | |
| CAMERON COUNTY, | § | |
| LEONEL SILVA, and | § | |
| RAMIRO MARTINEZ, | § | |
| Defendants. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is a Motion for Summary Judgment (Docket No. 23) filed by

City of Harlingen, Valley International Airport, Leonel Silva, and Ramiro Martinez (defendants).

A response (Docket No. 30) has been submitted by Clinton R. Brown (plaintiff). For the reasons

stated below, it is recommended that the motion be granted in part and denied in part.

### I. Background

Plaintiff, Clinton R. Brown, ("Brown") is suing the City of Harlingen, Valley

International Airport ("VIA"), Officer Leonel Silva ("Silva"), Officer Ramiro Martinez

("Martinez")[1] and Cameron County, for racial discrimination under 42 U.S.C. § 1981 and for

violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Brown also filed a claim

pursuant to 42 U.S.C. § 1985(c) which prohibits conspiracies to interfere with civil rights and

deprive persons of their rights and privileges.

Generally, Brown, who is African American, alleges that he was the target of racial

---

[1] Referred to collectively as "officers".

discrimination by two police officers which resulted in the wrongful confiscation of his property. Brown asserts that when he arrived at the Valley International Airport on July 27, 2000, and proceeded outside to catch a taxi, Officer Silva and Officer Martinez, two Harlingen city policemen, approached him and interrogated him as to the contents of his bag. Brown claims that Officer Silva had no reasonable suspicion or probable cause to detain Brown, when he refused to consent to a search of his bag. A narcotics dog was subsequently brought in. Brown argues that the dog did not alert, while Officer Silva argues that it did. In any event, Brown's bag was confiscated and then a search warrant obtained. Brown's personal items and money ($18,110.00) were found within, but no illegal drugs.

Brown voluntarily offered the Harlingen Police Department receipts and other evidence to show the legal origin of the $18,110.00. However, the matter was referred to the District Attorney's Office in Cameron County. The District Attorney filed an Original Petition of Notice of Seizure and Intended Forfeiture pursuant to TEX. CODE OF CRIM. PROC. § 59, on August 2, 2000, in the case styled *State of Texas v. Clinton Reginald Brown* (Cause No. 2000-08-3136-A) in the 107th Judicial District Court, Cameron County. This statutory provision requires that the entity seeking forfeiture plead and prove that the property was used or intended to be used or derived from a commission of a felony.

As the original petition failed to do this, Brown specially excepted to this defect in the pleadings. When the District Attorney filed her First Amended Petition, she admitted that the felony was not known. Brown then requested summary judgment based on the fact that there was no evidence and no genuine issue of material fact. The District Attorney's Office then filed a Motion for Non-Suit which was granted and the property was returned to Brown.

2

## II. Claims of the Parties

### A. City of Harlingen, VIA, and Officers Silva and Martinez

The City of Harlingen argues that VIA is a department of the city, citing the Charter of the City of Harlingen and City Ordinances relating to the airport. The city contends that VIA has no separate juridical existence and should be dismissed as a defendant in this case.

With respect to the claim of illegal seizure, Officers Silva and Martinez argue that there was no seizure because the stop and interrogation of Brown was a "consensual exchange", which need not be based on any suspicion. The officers argue that they believed from their words and actions that Brown would have reasonably construed the questioning as "consensual".

As to Brown's allegation of an illegal search, the officers argue that the search of the bag was made pursuant to a search warrant issued after a finding of probable cause based on Brown's admission that he had $10,000 in his bag, Brown's inconsistent stories regarding the purpose of his Florida trip, the officers' reasonable belief that a drug sniffing dog alerted to the bag, and Brown's prior offense for possession of marijuana. Further, the officers argue that Brown consented to the dog sniff of the bag.

As to Brown's allegation of racial discrimination, the officers argue that Brown has not provided any evidence of racial discrimination. They claim that characterizing Brown as a "suspicious black male" in the offense report was for identification purposes and did not show discriminatory intent. They also argue that they formed suspicions about Brown based on factors other than race.

The City of Harlingen argues that Brown has failed to present any evidence of a policy or custom which resulted in constitutional violations, and that Silva, as Supervisor of the Police

Drug Interdiction Unit, is not a policy maker.

### B. Brown

With respect to VIA, Brown argues that Article IX of the City Charter states that VIA is under the exclusive supervision, control, and authority of the Harlingen Airport Board and as such, VIA is a separate entity and should be dismissed.

As to the allegation of an illegal seizure of his person, Brown argues that the questioning was not a "consensual exchange", but rather a "brief investigatory stop" which requires a reasonable suspicion arising at the time the decision is made to approach the suspect. Brown's affidavit states that he was not told that he was free to leave and he did not believe that the communication was a consensual exchange.

As to the allegation of an illegal search of his bag, Brown argues that although he consented to the dog sniff, the dog did not alert and thus there was no probable cause to search his bag. Brown argues that the search warrant was invalid as it was based on this false information.

As to the allegation of racial discrimination, Brown argues that before the verbal communication between himself and the officers, there was no basis for their suspicions other than his race. There was no indication that Brown looked nervous or was avoiding eye contact. Brown contends that in order to maintain an action under §1981, he need only allege that he was treated differently on account of his race and not afforded the same rights under the law. Brown further argues that the City of Harlingen's failure to implement a policy against racial profiling, resulted in deliberate indifference to Brown's rights to be free from racial discrimination; failed to adequately train or supervise the officers in their interdiction activities at VIA; and Silva was

4

a policy maker for the city in his role as the Supervisor of the Police Drug Interdiction Unit at VIA.

### III. Summary Judgment Standard

Summary judgment evidence is viewed in the light most favorable to the non-movant. *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456-58 (1992). Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An alleged factual dispute will not defeat a motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Once the movant establishes the absence of a factual dispute, the burden shifts to the non-movant to show that summary judgment is inappropriate.

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256. Instead, the non-movant must "make a showing sufficient to establish the existence of each essential element of its case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This evidence must do more than create a metaphysical doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson*, 477 U.S. at 256.

### IV. Analysis

#### A. Status of Valley International Airport

Article IX of the Charter of the City of Harlingen states in pertinent part,

> "Said city shall have the power to provide for the ownership, establishment,

5

operation and maintenance of a public municipal airport, provided that the operation and maintenance of said airport and all supporting properties appurtenant thereto shall be under the exclusive supervision, control, and authority of a special board to be known as the "Harlingen Airport Board" which shall be composed of five residents of the City of Harlingen, Texas, to be appointed by the mayor of the City of Harlingen, Texas, and approved by the City Commission of the City of Harlingen, Texas...".

Although Brown argues that the control of the airport is divested by virtue of the management by the Board, it is clear that VIA is a department of the city. The Board is appointed by the mayor and approved by the City Commission. VIA should be dismissed.

### B. Clarification of Claims Under §1981 and §1983

In this particular case, Brown has brought claims under 42 U.S.C. §§1981, 1983, 1985 and state claims consisting of false imprisonment, malicious prosecution, and conspiracy. Brown's intertwining of §1981 and §1983 claims is confusing. Hopefully, the following analysis clarifies the issues.

Section 1983 "is not itself a source of substantive rights", it provides "a method for vindicating federal rights elsewhere conferred". *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (emphasis added). In a cause of action against a municipality, the plaintiff must show that the execution of a policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, causes the injury. Proof of liability requires the showing of: (1) either an official policy or actual or constructive knowledge by a policy maker of a custom, and (2) a constitutional violation whose "moving force" is that policy or custom.

In this case, Brown's §1983 claims are for Fourth Amendment illegal search and seizure and Fourteenth Amendment due process and equal protection violations against the City of

6

Harlingen and its employees.

The scope §1981 is broader, providing that, "All persons ... shall have the same right ... to full and equal benefit of all laws and proceedings ...as is enjoyed by white citizens...". The rights afforded by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law. To establish a claim under §1981, a plaintiff must allege that he is a member of a racial minority that the defendant intended to discriminate on the basis of race, and that the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir.1994).

These two statutes are distinct. For example, "§1981 provides a cause of action for public or private discrimination based on race", while §1983 does not reach purely private conduct. *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir.1986), aff'd in part and remanded in part, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In fact, §1983 provides the "exclusive" federal remedy for the violation of the rights guaranteed by §1981 when the claim is against a "state actor". *Id. See also, Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002). Although respondeat superior liability may be available through §1981, (*Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1234-36 (5th Cir.1989)), it is not available through §1983 (*Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002)).

Brown brings §1981 and §1983 claims based on the same set of facts. Because §1983 encompasses §1981 actions against state actors, the Fifth Circuit mandates that Brown's claims be analyzed under §1983. "A panel of this Court has recently suggested that a §1981 claim against a state employee must be asserted through §1983." *Foley v. University of Houston*

7

*System*, 324 F.3d 310, 316 n.8 (5th Cir. 2003), citing *Felton v. Polles*, 315 F.3d 470, 483 (5th

Cir. 2002) (plaintiff's §1981 claim against a state actor was dismissed for failure to make a

claim, where the only proper claim was under §1983). As Brown's §1981 claim is asserted

against a state actor, he has failed to state a proper claim.

### C. Clarification of Actions Brought Against Parties in their Individual and Official Capacities

Brown has named defendants Silva and Martinez in their official capacities.

Official-capacity suits "generally represent another way of pleading an action against an entity of

which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). They are not suits against the

official personally, the real party in interest is the entity. There is no need to bring

official-capacity actions against local government officials. Local government units can be sued

directly for damages and injunctive or declaratory relief. *Kentucky v. Graham*, 473 U.S. 159,

167, 105 S.Ct. 3099,3106, 87 L.Ed.2d 114, n. 14 (1985).

Brown has named defendants Silva and Martinez in their individual capacities. They

have raised the defense of qualified immunity. Qualified immunity attaches only to officials in

their individual, not their official capacities. *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir. 1990).

### D. Qualified Immunity

Government officials acting within their discretionary authority are immune from civil

damages if their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known. *Evett v. Detntff*, 2003 WL 21054660

(5th Cir. 2003), citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). Qualified

8

immunity claims are subject to a two step analysis. The first step requires determining "whether the plaintiff has alleged the deprivation of an actual constitutional [or statutory] right", *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). That right must be clearly established under currently applicable standards. Only if the plaintiff has demonstrated this, should the court proceed to the second step. The second step is actually two separate inquiries: (1) whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, (2) whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir.1998). The conduct of the defendant is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir.2001).

To satisfy the first step a plaintiff may allege the claimed deprivation at a higher level of generality. *Thompson*, 245 F.3d at 459. For the second step, the right alleged to have been violated must have been "clearly established" so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The second step focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and the factual setting in which it took place. *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir.1997).

### E. Violations of the Fourth Amendment under §1983

#### 1. Seizure of Brown's Person

Whether Brown was unreasonably seized when stopped for questioning at the

airport, depends on the totality of the circumstances. Police-citizen contact can be broken down into three "tiers" for purposes of Fourth Amendment analysis: (1) mere communication between officer and citizen which involves no coercion or detention (characterized as " a consensual exchange" in which no Fourth Amendment concerns are implicated); (2) an investigatory stop involving a brief seizure which must be supported by reasonable suspicion; and (3) a full-scale arrest supported by probable cause. *U.S. v. Watson*, 953 F.2d 895 (5th Cir. 1992).

A person is "seized" only when by means of physical force or a show of authority, his freedom of movement is restrained. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification. *United States v. Mendenhall*, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 1876-77, 64 L.Ed.2d 497 (1980).

The essential inquiry in ascertaining the existence of a consensual exchange, is whether the person stopped reasonably believed that he or she was free to leave. This inquiry is largely a factual one which depends on the totality of the circumstances. Law enforcement officers do not violate Fourth Amendment by merely approaching individual in public place, asking him if he is willing to answer some questions, putting questions to him if he is willing to listen, or offering in evidence in criminal prosecution individual's voluntary answers to such questions. *U.S. v. Carreon-Palacio*, 267 F.3d 381 (5th Cir. 2001).

If the contact between the police officer and the citizen is characterized as a brief investigatory stop, then it must be supported by reasonable suspicion. Reasonable suspicion is more than an inchoate and unparticularized suspicion or hunch about criminal activity. *U.S. v.*

10

*Chavez*, 281 F.3d 479 (5th Cir. 2002). In addition, the inception of "reasonable suspicion" is crucial. The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer "at the time of the decision to stop a person". *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000).

Under the summary judgment standard, evidence is to be viewed in a light most favorable to non-movant, Brown. In his affidavit, Brown states that he did not perceive the encounter as a consensual exchange because he did not believe that he was free to leave or not answer the officers' questions. Taking Brown's statement about his belief as true, then the actions by the officers would amount to brief investigatory stop, which must be supported by reasonable suspicion at the time the officers made the decision to approach Brown. The only basis for approaching Brown was that the officers observed a "suspicious black man". The factors that the officers later stated as probable cause in support of the search warrant, were developed only after the questioning had taken place. Therefore, there was no reasonable suspicion formed at the time that the officers approached Brown and made their brief investigatory stop.

Brown had a constitutionally protected right to right to be free from unreasonable seizure. The officers did not form a reasonable suspicion before approaching him and thus violated his constitutional right.

The second question is whether the officers reasonably believed that their actions were constitutional. To answer this question, the court must know whether the officers "reasonably believed" that Brown could have "reasonably believed" the questioning was consensual. There is a fact question as to the exchange that took place. The officers argue that they reasonably

11

believed that Brown could have believed that the encounter was consensual because they advised

him that it was such.  Brown argues that the officers could not have reasonably believed that their

actions amounted to a consensual exchange because they never informed him that he was free to

leave or not answer their questions.

Viewing the facts most favorably to Brown, the officers are not entitled to qualified

immunity on this issue.  There remains an unresolved issue of material fact.

### 2. Seizure of the Bag

A seizure occurs when there is a meaningful interference with a

possessory interest in the property seized.  *Maryland v. Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86

L.Ed.2d 370 (1985).  Brown argues that the confiscation of his bag pending a search warrant

(obtained that same day) was an unreasonable seizure.  Brown also argues that the continued

possession of the bag by the officers was an unreasonable seizure because the search warrant was

based on incorrect information.  Brown has not made the argument that the dog sniff of the bag

was a seizure.  It is well established that a person's privacy does not extend to the outside of a

bag for purposes of the Fourth Amendment.  *U.S. v. Goldstein*, 635 F.2d 356 (5th Cir. 1981)

(sniffing of defendant's luggage by dog was not an investigatory stop as the use of the dog is not

a search or seizure).

A brief investigatory stop, detention, or seizure requires reasonable suspicion.  The

officers set forth several grounds for their reasonable suspicion regarding the contents of the bag

including: (1) Brown's admission of prior drug violation in Florida, (2) Brown's admission that

there was approximately $10,000 cash in the bag, (3) Brown's inconsistent statements regarding

the purpose of his Florida trip, and (4) the officer's belief that the dog alerted to the presence of

12

narcotics.  Although Brown argues that the dog did not alert, it appears that the officers had other basis for reasonable suspicion.

Brown had a clearly established constitutional right to be free from an unreasonable seizure of his bag.  The facts, even when taken in a light most favorable Brown, reveal that the seizure was not made in violation of the Fourth Amendment, as the officers had sufficient basis to form a reasonable suspicion, based on Brown's independent statements and the dog's behavior.

As to the issue of the validity of the search warrant, the analysis below reveals that there is not a sufficient basis to challenge the validity of the warrant.  As such, the subsequent permanent seizure of bag resulting from the warrant-based search was not unreasonable.

### 3. Search of the Bag

Brown argues that the search of his bag was unreasonable as it was made pursuant to an invalid warrant based on false information, that is the dog alert.  There is a presumption of validity with respect to affidavits supporting search warrants, *see U.S. v. Brown*, 298 F.3d 392 (5th Cir. 2002).  However, this presumption can be rebutted by showing intentional falsity or a reckless disregard for the truth by a preponderance of the evidence.  *Franks v. Delaware*, 438 U.S. at 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

If the party challenging the affidavit succeeds in showing it is based on false evidence, the court must excise the false language from the affidavit and then determine whether the remaining portion establishes probable cause.  *U.S. v. Cavazos*, 288 F.3d 706 (5th Cir. 2002).

In this case, Brown does not allege that the officer's misstatement was intentional or the result of reckless disregard for the truth.  The summary judgment evidence shows that the

13

officers' honestly believed that the dog alerted. Even if Brown were to be able to prove that the dog alert statement was false, causing it to be stricken from the affidavit, sufficient probable cause still exists based on the other facts listed by the officer.

There was no violation of Brown's right to be free from an unreasonable search. The search was made pursuant to a warrant, issued by magistrate upon a finding of probable cause. Brown has not met his burden of demonstrating that the warrant was invalid.

### F. Violations of the Fourteenth Amendment under §1983

#### 1. Due Process Analysis

Brown argues that his due process rights were violated with respect to the confiscation of his property. However, Brown fails to allege specifically which actions of the officers or City of Harlingen violated his rights.

Procedural due process imposes constraints on governmental actions which deprive individuals of "property" interests. It requires that a person in jeopardy of serious loss, be given notice of the case against him and an opportunity to answer it. The procedure should be tailored, in light of the decision to be made and the capacities and circumstances of those who are to be heard, in order to insure they are given a meaningful opportunity to present their case. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In this case, the facts show that the officers held Brown's bag in order to secure a search warrant which was issued that same day. After the bag was inspected, the property was turned over to the Cameron County District Attorney's Office the next day. The actions by the officers and the City of Harlingen do not show any procedural due process violations.

14

### 2. Equal Protection Analysis

The Fourteenth Amendment entitles persons to equal protection under the law. The central purpose of this clause is the prevention of official conduct which discriminates on the basis of race. *Washington v. Davis*, 426 U.S. 229, 96 S. Ct. 2040, 48 L.Ed.2d 597 (1976). In making a claim of discrimination, proof of racially discriminatory intent or purpose is required to show a violation, not mere discriminatory results. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." *Id.*, at 242, 96 S.Ct., at 2049.

This provision encompasses actions by the state. Cities wield state power within the meaning equal protection clause. *Hunter v. Erickson*, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969). Similarly, involvement of city policeman in effecting racial discrimination provides a state action essential to show direct violation of equal protection rights, whether the actions of police were officially authorized or lawful. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The discriminatory state action can take the form of overt discriminatory treatment or deliberate indifference towards a person's constitutionally protected rights.

In the context of searches and seizures, officers may decide to interview a suspect based on several factors, some of them may be race based while others may be race neutral. In regards to Fourth Amendment implications, the use of race in pre-contact stage does not give rise to constitutional protections. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). However, consensual encounters, searches and seizures based solely on race may violate the Equal Protection Clause of the Fourteenth Amendment even though they are permissible under the Fourth Amendment.

15

When an officer makes the decision to approach and interview a person based on several reasons, some of which are race neutral, there may not be an Equal Protection Violation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that when school district fires teacher for several reasons, even if one reason standing alone would violate teacher's First Amendment rights, no constitutional violation if other reasons are legitimate).

In this case, the officers did not have any race neutral reasons for approaching Brown. Prior to the encounter, there is no indication that the officers knew Brown was coming from a "drug source city", that Brown had a previous drug violation, or any indication of nervous behavior.

As for the first step of qualified immunity, Brown has made allegations that would be sufficient to establish a violation of a clearly established constitutional right to be free from racial discrimination. The officers' failure to specify any race neutral reasons for their approach and questioning is not objectively reasonable in light of the protections clearly set forth by the Fourteenth Amendment. Reasonable officers in their position would have known that disparate treatment based on race is prohibited. These officers are not entitled to qualified immunity.

### G. City of Harlingen and Respondeat Superior Liability Under §1983

Brown argues that the City of Harlingen is also liable for the constitutional violations committed by the officers in §1983 cause of action. In order to make a claim against the city, respondeat superior liability is not sufficient. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a valid claim against a city under §1983, a plaintiff must identify a policy of the city's policymaker that caused

16

the plaintiff to be subjected to a deprivation of constitutional right. *Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 516 (5th Cir.1987). A policy will be attributed to a city for purposes of §1983 liability, "where the policy was made by an official to whom the governing body had given policymaking authority." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (en banc), modified, 735 F.2d 861 (5th Cir.1984) (en banc) (per curiam). The governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility. *Id.* at 769. A single decision by local official will rise to the level of an official policy, only when the official has final policy making authority under state law. *Guidry v. Broussard*, 897 F.2d 181 (5th Cir. 1990). Put another way, a single incident unaccompanied by supporting history will not likely be an adequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir.1989).

Alternative means of alleging a policy or custom have been acknowledged by the Fifth Circuit including an unwritten policy in the form of acquiescence or failure to adequately train personnel amounting to deliberate indifference.

### 1. Acquiescence

In order for inaction or acquiescence to rise to the level of an official policy, it must be shown that the municipality had knowledge of the violations and either approved it or allowed it to continue without corrective action. Plaintiffs must demonstrate that the municipality was deliberately indifferent. *Pineda v. City of Houston*, 124 F.Supp.2d 1057 (S.D. Tex. 1997). Deliberate indifference is a stringent standard requiring proof that a municipal

actor disregarded a known or obvious consequence of his action. *Bryan County Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In this case, Brown offers no evidence that the City of Harlingen had actual or constructive knowledge that the officers were subjecting Brown, or other African-Americans, to racial discrimination, unreasonable seizures, and searches based on invalid warrants. Nor has Brown alleged facts that the city approved of this policy or that the acts were so blatant and numerous that approval or knowing disregard can be inferred. Brown merely states that there a policy, without alleging facts thereof, pointing out other incidents, or providing summary judgment evidence in support.

### 2. Failure to Train

Municipal liability for the failure to train or supervise police officers arises only when the failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In order to present a claim plaintiffs must show that the training or supervising procedures of the municipality's policymaker were inadequate, the municipality's policymaker was deliberately indifferent in adopting the training or supervising policy, and the inadequate training or supervising policy directly caused the plaintiffs' injury. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir.2000).

Inadequacy can be shown by demonstrating that the city deliberately chose not to train or supervise its officers despite being on notice that its training and supervising regimen failed to prevent violative conduct by its officers. *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir.2000). Inadequacy can also be demonstrated under the "single incident exception" in which

a single violation of federal rights may be sufficient to prove deliberate indifference. This exception requires proof that officers are placed in recurring situations which present an obvious potential for violation of constitutional rights and the need for additional or different police training. *Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In addition, the plaintiff must also show actual or constructive knowledge of the inadequacy of the training program attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actual knowledge can be shown by evidence such as discussions at meetings or receipt of written information by city policymakers. *Bennett*, 728 F.2d at 768. Constructive knowledge can be shown by proving that constitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities, the city's governing body should have known of it. *Id.* at 768.

In this case, Brown has failed to allege facts or submit summary judgment evidence as to how or why the training was inadequate, or that the municipality's actual or constructive knowledge of inadequate training constituted a pattern of misconduct.

### 3. Silva's Role as a Policy Maker

Brown argues that Silva is a City of Harlingen policy maker in his capacity as the supervisor of the drug interdiction force at VIA. As detailed above in the *Bennett* case, the governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility. Brown has not presented any factual allegations pertaining to these specific requirements. Summary judgment may be properly entered against a party, who after adequate time for discovery, fails to establish the existence of an element essential to their case and as to which

19

they will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

### H. Conspiracy Claim Under §1985

Subsection (3) of §1985 prohibits conspiracies to deprive persons of equal protection of

the law. There must be some racial, or otherwise class based discriminatory animus behind the

conspirator's action and the conspiracy must aim at deprivation of equal enjoyment of rights

secured by law to all. *United Bros. of Carpenters and Joiners of American, Local 610, AFL-CIO

v. Scott*, 463 U.S. 825, 103 S. Ct. 3352, 77 L.Ed.2d 1049 (1983). In order to state a claim, the

plaintiff must show a conspiracy involving two or more persons, for purpose of depriving, either

directly or indirectly, person or class of persons equal protection of laws, and act in furtherance

of conspiracy, which causes injury to person or property, or deprivation of any right or privilege

of a citizen of the United States. *Suttles v. U.S. Postal Service*, 927 F. Supp. 990 (S.D. Tex.

1996).

However, under the "intracorporate conspiracy" doctrine, a corporation cannot conspire

with itself through its agents or employees when the acts of the agents or employees are within

the scope of their employment. *Suttles* at 1002. The intracorporate conspiracy doctrine is

equally applicable to governmental entities. Id.

In this case, Brown fails to identify the parties to the conspiracy. As between the officers

(employees of the city) and the City of Harlingen, there can be no conspiracy. Brown fails to

plead sufficient facts to assert a claim under subsection (3) as there is no adequate summary

judgment evidence to raise a fact issue with respect to such a claim.

20

### VI. Recommendation

**IT IS RECOMMENDED** that Summary Judgment be **GRANTED** as follows:

    1. Dismissing Valley International Airport as a defendant.

    2. In favor of Officers Silva and Martinez on the issue of Qualified Immunity with respect to the search of the bag conducted in violation of Brown's Fourth Amendment rights.

    3. In favor of Officers Silva and Martinez on the issue of Qualified Immunity with respect to the violation of Due Process rights under the Fourteenth Amendment.

    4. In favor of Officers Silva and Martinez with respect to the cause of action under 42 U.S.C. §1985.

    5. In favor of the City of Harlingen on the issue of the absence of a requisite policy or custom for liability under §1983.

    6. In favor of the City of Harlingen with respect to the cause of action under 42 U.S.C. §1985.

**IT IS FURTHER RECOMMENDED** that Summary Judgment be **DENIED** as follows:

    1. Officers Silva and Martinez on the issue of Qualified Immunity with respect to the seizure conducted in violation of Brown's Fourth Amendment rights.

    2. Officers Silva and Martinez on the issue of Qualified Immunity with respect to the racial discrimination in violation of Brown's Fourteenth Amendment rights.

    A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of June, 2003.

John Wm. Black
United States Magistrate Judge

22