41

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 2 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CLINTON R. BROWN | § | |
| Plaintiff | § | |
| VS | § | |
| | § | CIVIL ACTION NO. B-02-142 |
| CITY OF HARLINGEN, TEXAS | § | |
| VALLEY INT'L AIRPORT | § | |
| LEONEL SILVA & | § | |
| RAMIRO MARTINEZ, ET. AL. | § | |
| Defendants | § | |

**CITY DEFENDANTS' MOTION TO RECONSIDER MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION
AND SUPPLEMENTATION OF SUMMARY JUDGMENT EVIDENCE**

May it Please the Court:

COME NOW DEFENDANTS, LEONEL SILVA and RAMIRO MARTINEZ, Individually (hereafter "CITY DEFENDANTS") and file this their Motion to Reconsider the Magistrate Judge's Report and Recommendation and additionally file supplement summary judgment evidence in support of said Motion, pursuant to Federal Rule of Civil Procedure 56(e).

**MAGISTRATE JUDGE'S RECOMMENDATION**

The Magistrate Judge recommends that City Defendants' summary judgment be denied in part and granted in part. Defendants Officers Silva and Martinez hereby ask the Magistrate Judge to reconsider the Report and Recommendation denying summary judgment on the issue of qualified immunity with respect to the seizure conducted in violation of Brown's Fourth Amended rights and on the issue of qualified immunity with respect to racial discrimination in violation of Brown's Fourth Amended rights.

## PROCEDURAL HISTORY AND SUPPLEMENTAL EVIDENCE

The Magistrate originally set a hearing on the CITY DEFENDANTS qualified and sovereign immunity defenses, sua sponte. In response to such setting, CITY DEFENDANTS filed their Motion for Summary Judgment on the issues of qualified and sovereign immunity. A hearing was then set for CITY DEFENDANTS Motion for Summary Judgment. Given the pending qualified immunity issues in the Motion for Summary Judgment, CITY DEFENDANTS did not engage in any deposition discovery, in order to preserve the privilege of the Individual Defendant officers from being subjected to deposition discovery prior to a hearing on the qualified immunity issue.

However, after the initial hearings on dispositive motions, the parties agreed to exchange deposition discovery. CITY DEFENDANTS offered to waive their privilege against engaging in discovery, so long as Plaintiff understood that the assertion of qualified immunity was not so waived. CITY DEFENDANTS took the deposition of Plaintiff. Plaintiff has yet to take the deposition of the Individual CITY DEFENDANTS.

As a result of this, CITY DEFENDANTS did not have Plaintiff's deposition testimony available to attach as summary judgment evidence prior to the Court's issuing its recommendation. At this time, this evidence is available and CITY DEFENDANTS hereby attach as supplemental summary judgment evidence pursuant to Rule of Civil Procedure 56(e) and thereby ask the Court to consider said summary judgment evidence and reconsider its Report and Recommendation with respect to the qualified immunity issues.

## ARGUMENT AND AUTHORITIES

As pointed out previously in the Motion for Summary Judgment, in initially approaching the Plaintiff in this case, DEFENDANTS SILVA and MARTINEZ could approach Plaintiff, as they could approach anyone on the street, and ask permission to ask questions or ask for identification. *See Florida v. Bostick*, 501 U.S. 429, 435 (1991). ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual ... [and] ask to examine the individual's identification ... as long as the police do not convey a message that compliance with their request is required." (citations omitted)); *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir. 1995). ("[A] consensual encounter ... may be initiated by the police without any objective level of suspicion."). A consensual encounter does not trigger Fourth Amendment scrutiny. See *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889. Caselaw is clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The Supreme Court has repeatedly held that mere police questioning does not constitute a seizure. *Id.* The Supreme Court has dealt with encounters in airports just like this one, and has found them to be "the sort of consensual encounter[s] that implicat[e] no Fourth Amendment interest." *Florida v. Rodriguez,* 469 U.S. 1, 5-6, 105 S.Ct. 308, 310-311, 83 L.Ed.2d 165 (1984). "[A]irport stops of individuals by police, if extremely

restricted in scope and conducted in a completely non-coercive manner, do not invoke the Fourth Amendment." *United States v. Berry*, 670 F.2d 583, 594 (5th Cir.1982) (en banc). The salient issue to be determined is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 559, 100 S.Ct. 1870, 1879 (1980); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323-1324 (1983)

Plaintiff has presented absolutely no evidence in support of his assertion that he felt he was not free to leave or that any such belief on his part was reasonable. Plaintiff offers no evidence or reason why he felt he was not free to leave, and offers nothing in the nature of evidence to establish that any belief that he was not free to leave was reasonable in light of these circumstances.

### SUPPLEMENTAL SUMMARY JUDGMENT EVIDENCE

CITY DEFENDANTS hereby offer and attach additional summary judgment evidence in support of their Motion for Summary Judgment and Motion to Reconsider, pursuant to Federal Rule of Civil Procedure 56(e). Such supplemental summary judgment evidence is in the nature of deposition excerpts from Plaintiff's deposition, attached herein as Exhibit "A" and incorporated by reference to City Defendants' Motion for Summary Judgment for all purposes. Plaintiff's own testimony establishes that the initial encounter with the CITY DEFENDANTS was completely consensual and Plaintiff's belief in his affidavit that he felt he was not free to leave is unreasonable.

Upon initially being approached by the Defendant officers, Plaintiff testified that the officers never told him he was

under arrest (Exhibit A, p.23, line 7-9), never told him he was not free to leave (Exhibit A, p. 23, line 2-5), never told him he was required to answer any of their questions (Exhibit A, p. 23, line 10-12), did not brandish their weapons (Exhibit A, p. 23, line 13-18), and did not attempt to physically detain or restrain him in any way (Exhibit A, p. 23, line 19-21). Personal liberty was in no way constrained by the officers approaching Plaintiff. Furthermore, by Plaintiff's own admission, he voluntarily answered the officers' questions. (Exhibit A, p. 23, line 22-p. 24, line 9).

When the officers asked Plaintiff for his identification, Plaintiff testified that the officers never told him he was under arrest (Exhibit A, p.25, line 25- p. 26, line 3), never told him he was not free to leave (Exhibit A, p. 26, line 4-6), did not brandish their weapons (Exhibit A, p. 26, line 7-8), and did not attempt to physically detain or restrain him in any way (Exhibit A, p. 26, line 9-11). When the officers asked Plaintiff if he was carrying any large amounts of currency, they never told Plaintiff he was under arrest (Exhibit A, p.28, line 9-11), did not attempt to physically detain or restrain him in any way (Exhibit A, p. 28, line 12-14), and did not tell Plaintiff he was not free to leave unless he answered the question (Exhibit A, p. 28, line 2-8).

In fact, prior to Plaintiff agreeing to the canine search, Plaintiff himself testified that the officers never once told him he was under arrest (Exhibit A, p.31, line 16-25), never once told him he was required to answer any of their questions (Exhibit A, p. 32, line 1-3), and never once told him he was required to comply with their requests (Exhibit A, p. 32, line 4-7).

Furthermore, Plaintiff testified that the *only* reason he felt he was not free to leave was the fact that two officers approached him and asked him questions (Exhibit A, p. 32, line 15-25; p. 33, line 21- p. 34, line 1). The fact that a police officer identifies himself as such, without more, does not convert a police-citizen encounter into seizure requiring some level of objective justification. *Florida v. Royer,* 460 U.S. 491 at 497, 103 S.Ct. 1319 at 1323-1324. Additionally, the fact that Plaintiff was never told he was free to leave or to refuse to speak with the officers is neither dispositive or constitutionally required. *United States v. Mendenhall,* 446 U.S. 544, 559, 100 S.Ct. 1870, 1879 (1980); *United States v. Robinson,* 625 F.2d 1211, 1218 (5th Cir.1980).

Plaintiff's own testimony establishes the initial stop of the Plaintiff by the Defendants SILVA and MARTINEZ as nothing more than a consensual encounter, requiring no probable cause or reasonable suspicion. Plaintiff's belief that he was not free to leave based on nothing more than the fact that two officers approached him is not reasonable in light of clearly established caselaw and does not raise a fact issue to take this initial stop out of the realm of a consensual encounter. Furthermore, given the facts of this encounter, any reasonable officer in the position of the individual Defendants would perceive that Plaintiff reasonably believed the questioning and encounter was consensual. There is no fact issue as to the facts of the exchange. Plaintiff's own testimony establishes that the officers reasonably believed the Plaintiff thought the encounter nothing more than consensual. There is no evidence or facts whatsoever to establish otherwise. In fact, to accept the Plaintiff's "belief" that he was not free to leave, would mean that there could never be a consensual encounter of any kind

between civilians and officers. An officer merely approaching a citizen and asking questions does not make an encounter a seizure, as Plaintiff is attempting to claim.

Thus, it is clear that this initial contact with Plaintiff clearly was a legitimate and completely consensual citizen-police encounter to which a reasonable person would have felt free to decline the officer's request or terminate the encounter. Thus, OFFICERS SILVA and MARTINEZ, in initially approaching Plaintiff for a consensual encounter and request for identification, were acting in a completely lawful fashion and summary judgment should be granted in favor of the Officers on this issue.

Additionally, CITY DEFENDANTS would request reconsideration of the Magistrate's Report to the extent it denies summary judgment on the basis of qualified immunity with respect to Plaintiff's Fourteenth Amendment Equal Protection claim. As indicated, the CITY DEFENDANTS did not need any probable cause or reasonable suspicion to approach Plaintiff and engage in a consensual interview. Such stop never rose to the level of a seizure. With respect to the reasons for approaching Plaintiff, Plaintiff has no evidence showing that he was stopped solely on the basis of his race or that race played a part at all in the approaching of Plaintiff. CITY DEFENDANTS' affidavit and police report previously attached to CITY DEFENDANTS' Motion for Summary Judgment detail the behavior exhibited by Plaintiff after exiting the plane and picking up his luggage, which includes walking in and out of the terminal on several occasions and placing calls on his cellular phone. Of particular importance, nowhere do such affidavits or reports indicate that CITY DEFENDANTS approached Plaintiff based on his race. Given the officers' mandate to observe persons behavior in the

airport, a reasonable officer in this situation would have approached Plaintiff for a simple consensual encounter.

### CONCLUSION & PRAYER

THEREFORE, CITY DEFENDANTS hereby request the Magistrate to consider this additional summary judgment evidence and reconsider its Report and Recommendation with respect to the issues of qualified immunity regarding Plaintiff's Fourth Amendment seizure claim and Fourteenth Amendment Equal Protection claim and urge the Court to grant summary judgment as to these issues in favor of Defendants Silva and Martinez.

CITY DEFENDANTS continue to request that upon final hearing of this case, that all relief sought by Plaintiff be denied, that a take nothing judgment against Plaintiff be entered.

Finally, CITY DEFENDANTS request any other additional and further relief, at law or in equity, to which they may be entitled.

SIGNED on the ___2nd___ day of July, 2003.

Respectfully Submitted,

**DENTON, NAVARRO, ROCHA & BERNAL**
A Professional Corporation
Bank of America Building
222 E. Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _____
RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. ID No. 5953
ROBERT DRINKARD
State Bar No. 24007128
Fed. Dist. No. 29288

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been sent by Regular U. S. Mail, postage prepaid, unless otherwise indicated, to the person(s) listed below on this 2nd day of July, 2003.

Mr. Daniel G. Rios        **By CMRRR: 7002 0860 0004 8101 8854**
LAW OFFICES OF DANIEL G. RIOS, P.C.
323 Nolana Loop
McAllen, Texas 78504
COUNSEL FOR PLAINTIFF

Mr. Francisco Martinez
Assistant County Attorney
Cameron County Courthouse
974 East Harrison Street
Brownsville, Texas 78520
COUNSEL FOR CAMERON COUNTY

_____
RICARDO J. NAVARRO
ROBERT DRINKARD

EXHIBIT " _A_ "

```
                                                                    1
 1           IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION
 3   CLINTON REGINALD BROWN        )(
            Plaintiff              )(
 4                                 )(
     VS.                           )( CIVIL NO. B-02-142
 5                                 )(
     THE CITY OF HARLINGEN, VALLEY)(
 6   INTERNATIONAL AIRPORT, CAMERON
     COUNTY, TEXAS, LEONEL SILVA   )(
 7   AND RAMIRO MARTINEZ           )(
            Defendants             )(
 8
```

         ORAL AND VIDEOTAPED DEPOSITION OF
                CLINTON REGINALD BROWN
                     MAY 16, 2003

ORAL AND VIDEOTAPED DEPOSITION OF CLINTON REGINALD BROWN, produced as a witness at the instance of the Defendant, City of Harlingen, taken in the above styled and numbered cause on MAY 16, 2003, reported by NINA GALLARDO, Certified Shorthand Reporter No. 2820, in and for the State of Texas, at the Law Office of Denton, Navarro, Rocha & Bernal, 222 East Van Buren, Harlingen, Cameron County, Texas, pursuant to the Federal Rules of Civil Procedure.

- - -   ORIGINAL

BRYANT & STINGLEY, INC.                        (956) 428-0755

1    A    "I live here in the Valley."

2    Q    At the time they asked you what your

3    business was in the Valley, did they tell you that

4    you were not free to leave?

5    A    No, sir, they did not and they didn't

6    tell me I was free to leave either.

7    Q    Did they tell you that you were under

8    arrest?

9    A    No, they did not.

10    Q    Did they tell you that you had to answer

11    their questions?

12    A    No, they did not.

13    Q    Did they brandish weapons in your

14    presence?

15    A    What do you mean?

16    Q    Did they pull out weapons and point them

17    at you, or hold them?

18    A    No, no one pointed a weapon at me.

19    Q    Did they physically restrain you in any

20    way?

21    A    No, they did not.

22    Q    Okay. So you voluntarily answered their

23    question about what your business was in the

24    Valley; is that correct?

25                MR. RIOS:   Object to the

24

1 mischaracterization. Also calls for a legal
2 conclusion.
3 Q (By Mr. Drinkard) You can answer the
4 question, Mr. Brown.
5 A I'd rather not answer the question.
6 Q Sir, you need to answer the question: did
7 you voluntarily answer their question about what
8 your business was in the Valley?
9 A Yes, I did.
10 MR. RIOS: Same objection. Go
11 ahead.
12 Q (By Mr. Drinkard) What did they say
13 after you told them that you lived in the Valley?
14 A They told me no I didn't.
15 Q They told you you did not live in the
16 Valley?
17 A Yes, they did.
18 Q Okay. And what did you say in response
19 to that?
20 A "I do live in the Valley."
21 Q And what else?
22 A That's when they began interrogating me.
23 Q Okay. How did they interrogate you?
24 What did they ask you?
25 A They were asking me what was my business

25

1    here in the Valley.  And I told them that I lived
2    here in the Valley.  They said, "No, you didn't --
3    no, you don't live here in the Valley."  And then
4    they asked me -- they started asking could they
5    search my -- my bags.
6         Q    Okay.  You told me that at some point
7    they asked you for identification; is that correct?
8         A    Yes.

26

1  identification, did they tell you that you were
2  under arrest?
3       A   No, they did not.
4       Q   Did they tell you that you were not free
5  to leave?
6       A   No, they did not.
7       Q   Did they brandish their weapons?
8       A   No, they did not.
9       Q   Did they physically restrain you in any
10 way?
11      A   No, they did not.
12      Q   Did you voluntarily give them your I.D.?
13              MR. RIOS:  Object to the
14      mischaracterization and to the extent it
15      calls for legal conclusion.  Go ahead and
16      answer.
17      Q   (By Mr. Drinkard)  Did you voluntarily
18 give them your identification?
19      A   (No audible response).
20      Q   Mr. Brown, are you going to answer the
21 question?
22      A   I already answered the question once for
23 you.
24      Q   No, sir, you didn't.  Did they -- did you
25 voluntarily give them your identification?

28

```
 1        A    I told them yes I did.  I have.
 2        Q    When the officers asked you if you were
 3   carrying any large amounts of currency, did they
 4   tell you that you had to answer that question?
 5        A    No, they didn't.
 6        Q    Okay.  Did they tell you you were not
 7   free to leave unless you answered that question?
 8        A    No, they didn't.
 9        Q    Did they tell you you were under arrest
10   unless you answered that question?
11        A    No, they didn't.
12        Q    Did they physically restrain you in any
13   way at the time they asked you that question?
14        A    No, they didn't.
15        Q    Okay.  When you responded that you were
16   carrying a large amount of currency, what happened
17   then?
18        A    The officer put the dog on the bag, if
19   I'm not mistaken.  He wanted to get the dog to
20   sniff the bag.
21        Q    Prior to putting the dog on the bag, did
22   you tell them a specific amount of cash that you
23   were carrying?
24        A    Yes, I did.
25        Q    Okay.  What did you tell them?
```

```
 1        Q   Did the officers tell you that you were
 2   not free to leave unless you allowed the dog to
 3   search your bag?
 4        A   No, they did not, but they neither told
 5   me that I was free to leave.
 6             MR. DRINKARD:  Object to the
 7        responsiveness.
 8        Q   (By Mr. Drinkard)  Did the officers tell
 9   you you were under arrest unless you agreed to have
10   the dog smell the bag?
11        A   No, they did not.
12        Q   Did the officers tell you that your bags
13   were going to be held unless you allowed the dog to
14   smell the bag?
15        A   No, I don't think so.
16        Q   Now, the next thing he did, is he went
17   back inside to have the dog smell the bag; is that
18   correct?
19        A   Yes, sir.
20        Q   At any point prior to that, did the
21   officers tell you that you were not free to leave?
22        A   No, sir.
23        Q   Did the officers tell you that you were
24   under arrest at any point prior to that?
25        A   No, sir.
```

32

```
 1      Q   Did the officers tell you that you had to
 2   answer their questions --
 3      A   No, sir.
 4      Q   -- prior to that?  Did the officers tell
 5   you you had to comply with their requests prior to
 6   that?
 7      A   No, sir.
 8      Q   Okay.  Did the officers -- prior to you
 9   going inside to have the dog smell the bag, did the
10   officers do anything to convey to you that you were
11   not free to leave?
12              MR. RIOS:  Object to vagueness.
13              MR. DRINKARD:  I'll ask the
14   question again.
15      Q   (By Mr. Drinkard)  Did the officers do
16   anything that led you to believe you were not free
17   to leave?
18      A   Yes.
19      Q   What did they do?
20      A   By walking up to me, showing me their
21   identifications, and asking me questions about what
22   I was doing here in the Valley.
23      Q   Okay.
24      A   That led me to believe that I was not
25   free to leave at that time.
```

BRYANT & STINGLEY, INC.                    (956) 428-0755

33

1    Q    So just the fact that officers came up to
2    talk to you, led you to believe you were not free
3    to leave; is that correct?
4            MR. RIOS:    Object to
5        mischaracterization.
6    Q    (By Mr. Drinkard)    Is that a correct
7    characterization?
8    A    Could you repeat that?
9    Q    Sure.   The fact that the officers walked
10   up to you, identified themselves, and asked you
11   questions, that led you to believe you weren't free
12   to leave?
13           MR. RIOS:    Object to the
14       mischaracterization?
15   A    I'll leave that up to my attorney to
16   answer that.
17   Q    And let me tell you how this --
18           MR. RIOS:    You can go ahead and
19       answer it the best you can.
20   A    Okay.   Well, one more time.
21   Q    (By Mr. Drinkard)    Okay.    Did the fact
22   that the officers walked up to you, identified
23   themselves as officers, and asked you questions, is
24   that the only thing that led you to believe you
25   weren't free to leave?

```
 1        A    Yes, sir, at that time.
 2        Q    And just so we understand, your attorney
 3   is going to object, and that is his right, and he's
 4   doing that to protect the record, but that doesn't
 5   necessarily mean that you don't have to answer the
 6   question, okay?  Do you understand that?
 7        A    Yes, I do.
 8        Q    Okay.  Did the officers at any point ask
 9   you where you were coming from?
10        A    Yes, they did.
11        Q    Okay.  And what did you tell them?
12        A    From Florida.
13        Q    Did they ask you why you were coming from
14   Florida?
15        A    Yes, they did.
16        Q    And what did you tell them?
17        A    I had taken my wife to Florida.
18        Q    When the officers asked those questions,
19   did they tell you that you were required to answer
20   them or you were not free to leave?
21        A    No, they did not.
22        Q    Did the officers ask you if they could
23   count the currency that you had in your bags?
24        A    I don't remember.
25        Q    Did you tell them that they were free to
```